Pauline Bushu, Appellee, v. Frank Cordera et al., Appellants.

Gen. No. 8,345.

Opinion filed April 22, 1930. Rehearing denied May 31, 1930.

ALVIN G. WHITEHOUSE, JAMES H. MURPHY and JESSE PEEBLES, for appellants.

POPE & DRIEMEYER and RAYMOND G. REAL, for appellee.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

On the trial in this case in the court below appellee, as the administratrix of the estate of her husband, recovered a judgment for $5,000 damages in an action on the case against appellants. The appellants consist of the father and three sons who were partners in the trucking business. The truck was being driven by Angelo Cordera alone. The deceased was the engineer on a passenger train operated by the C. C. C. & St. L. Ry. Co. The first three counts of the declaration charged that Angelo Cordera on April 16, 1928 drove a truck owned by the defendants in a northerly direction on the hard road known as route No. 4 toward where said road crosses the tracks of said railroad company; that plaintiff's intestate was a railroad engineer employed by the railroad company and was driving a locomotive attached to a train of cars proceeding to St. Louis and while it was going in a westerly direction at the intersection of the road and the railroad tracks Cordera so carelessly and improperly drove and managed the truck that the train struck the truck, the engine was derailed and plaintiff's intestate was killed. The second count charges that Cordera drove the truck in question just before the collision at a speed of 20 miles per hour which was greater than the statutory rate of speed which he was permitted to use. The third count charges that Cordera failed to reduce the rate of speed of the truck to 10 miles an hour as required by statute and that the load thereon was greater than the weight permitted by the statute. The last three counts are not abstracted except with the statement that they charge wanton and wilful negligence.

The railroad tracks run northeasterly and southwesterly and cross the State highway No. 4 at a point about two miles southwest of the Village of Livingston.

This is a country crossing and is not within the limits of any incorporated town, village or city. Angelo Cordera was proceeding from St. Louis to Benld in a truck loaded with merchandise. The truck weighed over 9,000 pounds and the load of merchandise 7,000 pounds or three and one half tons. The tracks of the railroad ran in a straight line as did also the highway. The tracks crossed the highway at an angle of practically 45 degrees so that they would be more or less in front of a person approaching the crossing from the south. There was a railroad crossing sign located 325 feet south of the crossing. Nearer the crossing was the State stop sign. There were also four sets of black and white painted stripes on the highway, the first being 119 feet south and the fourth 416 feet south of the crossing. The surrounding country was practically level and the fields in the vicinity of the railroad tracks and the highway were planted in wheat which at that time was but a few inches high. At a point 250 feet south of the south rail of the southbound railroad track a train could be seen 3,500 feet east of the crossing. At a point 200 feet south thereof a train could be seen as far as the town of Livingston, a distance of about two miles. From a point 348 feet south of the tracks the view was unobstructed toward the east for 2,500 feet. The only obstruction to the view from any of these points was a line of telegraph or telephone poles. The train at the time of the collision was running between 50 and 60 miles per hour in a southwesterly direction. Angelo Cordera was driving north on the highway at a speed of about 20 miles per hour. When Angelo Cordera reached the first black and white diagonal lines on the pavement the evidence is that he looked east and west and saw no approaching train. He did not slacken the speed of the truck in any way but ran the same onto the crossing where it was hit by the engine and the collision caused the de-

railment thereof resulting in the death of plaintiff's intestate. All the above facts are conceded and undisputed. It is proved by a manifest weight of the evidence, not only by the train crew but by a number of disinterested witnesses, that the whistle on the engine was blown for the crossing and that the bell thereon was ringing. There is no evidence that Angelo Cordera looked to the east or west to see whether a train was coming except at the time when he approached the black and white diagonal lines painted on the highway which were located 416 feet south of the crossing. The truck was equipped with solid rubber tires and had a gross weight with its load of more than 12,000 pounds and under section 23 (3) of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 24, its speed was limited to 12 miles per hour, and section 145b of the Road and Bridge Act, Cahill's St. ch. 121, ¶ 161, provides that the person controlling the movement of any self-propelled vehicle upon approaching any highway crossing or a railroad at grade shall reduce the speed of such vehicle to one not to exceed 10 miles per hour and that at all grade crossings at which "stop" signs are placed shall bring such vehicle to a full stop before proceeding over the railroad tracks. There is no rule of law that it is negligence to run a railroad train at a high rate of speed through open country and Cordera, the driver of the truck, could not assume that a train might not approach this crossing at a high rate of speed. He violated the law in not stopping his truck when he came to the stop sign and also in driving it at 20 miles an hour. If he had looked at any point within 250 feet of the crossing he could have seen the approaching train for a distance of 3,500 feet. As was said in the case of *Greenwald v. Baltimore & Ohio R. Co.*, 332 Ill. 627, "The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and

see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. *(Graham v. Hagmann, 270 Ill. 252; Lake Shore and Michigan Southern Railroad Co. v. Hart, 87 id. 529; Chicago, Burlington and Quincy Railroad Co. v. Damerell, 81 id. 450; Toledo, Wabash and Western Railway Co. v. Jones, 76 id. 311.)* One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. *(Schlauder v. Chicago and Southern Traction Co., 253 Ill. 154.)* '' The evidence is conclusive that the driver of the truck disregarded all caution and recklessly drove it upon the railroad tracks. He was charged with notice that by placing such a heavy obstruction upon the track in such a manner might cause the wreck of any approaching train and jeopardize the lives not only of the train crew but of the passengers upon the train.

It is urged by counsel for appellant that the court erred in refusing to exclude the testimony and to direct the jury at the end of the plaintiff's case to find

the defendants not guilty and also in overruling a motion made to exclude all the evidence in the case at the end of all the evidence. The latter motion was first directed to the evidence under all the counts which was correctly refused by the court as there was ample evidence to sustain the first three counts of the declaration. The motion to exclude the evidence under the individual counts was limited to the sixth count which charged wilful and wanton conduct. This motion was also overruled. This count as before stated has not been abstracted but we assume from the statement in the abstract hereinabove referred to that it was substantially the same as the fourth and fifth counts. Ordinarily whether a party is guilty of wantonness and wilfulness under the evidence is a question of fact for the jury. *Bremer v. Lake Erie & Western R. Co.*, 318 Ill. 11. In connection with this question complaint is made of an instruction given on behalf of the plaintiff as follows: ''The court instructs the jury that, in order to prove wilful or wanton conduct upon the part of the defendants in this cause, it is not necessary to show that defendants possessed ill will against the deceased, Melvin A. Bushu.'' This is the only instruction offered or given on behalf of either party which mentions the subject of wilfulness and wantonness. It is but an abstract proposition of law and but partially defines wilful and wanton conduct. It might well have been refused but the giving of it under the circumstances was not reversible error as the question of wilful and wanton conduct on the part of the defendants was practically eliminated from the case by the giving of plaintiff's third instruction, to which no objection is made, which specifically limits and restricts the jury in the assessing of damages to such actual damages as would be a fair and just compensation which might be shown by the evidence for the pecuniary injuries resulting from the death of plaintiff's intestate to his widow and next of kin

and what they might have reasonably expected in a pecuniary way from the continued life of the intestate.

Counsel in their statement preceding their brief make the following statement: "We also respectively present that when all the circumstances of this case are considered, it was error on the part of the trial judge to refuse the second instruction (rec. p. 211) which was asked for by the defendants and refused by the court." In the whole statement, brief and argument of counsel for appellant, this is the only reference to either the abstract or the record where either the evidence or the instructions might be found. It is a rule of this court that all references to the evidence and matters presented to be considered should be designated where the same might be found in the abstract. We have, however, examined the page of the record referred to and find that there are two refused instructions on said page, the first is an abstract proposition of law stating that it was the duty of plaintiff's intestate while driving the engine and train of cars over a public road crossing to regulate the speed thereof with proper regard for public safety and the rights of those persons who might lawfully be traveling along and upon the public highway. The other refused instruction attempts to set out the rule in regard to the burden of proof. Neither instruction is identified by number nor is the instruction referred to mentioned again in the argument. Counsel for appellee assume that refused instruction No. 2 as mentioned is the first refused instruction on said page of the record. If they are right in this it was rightfully refused as being a mere abstract proposition of law and not applied to any of the facts in the case. However, we have no way of determining which instruction is referred to.

There is no reversible error in the record and the judgment of the circuit court is affirmed.

*Affirmed.*