Hugh Gregory et al., Appellees, v. Earl H. Merriam and Transamerican Freight Lines, Inc. Earl H. Merriam, Appellant.

484

Opinion filed March 9, 1938. Rehearing denied April 15, 1938.

A. A. ALEXANDER, of St. Louis, Mo., and TERRY, GUELTIG & POWELL, of Edwardsville, for appellant.

PHILIP G. LISTEMAN and WHITNEL, BROWNING & WALKER, both of East St. Louis, for appellees.

MR. JUSTICE EDWARDS delivered the opinion of the court.

In the early afternoon of April 27, 1936, plaintiffs Hugh Gregory, Ethel Gregory, his wife, and June Winchester, daughter of his wife by a former marriage, were proceeding northerly along U. S. Highway no. 66 in an automobile driven by Hugh Gregory. When about three miles north of the Village of Hamel their car collided with a southbound truck loaded with hay. The defendants to the action were Earl H. Merriam, who was driving a Ford sedan southward ahead

of the hay truck, and the Transamerican Freight Lines, Inc., whose truck was following the one loaded with hay.

At the close of plaintiffs' case each defendant moved for a directed verdict. The motion of Transamerican Freight Lines, Inc., was sustained, that of Merriam overruled, and the cause thereafter proceeded against him alone. The jury awarded damages to Hugh Gregory and Ethel Gregory in the sum of $2,500 each, and to Ethel Gregory, administratrix of the estate of June Winchester, who had died as a result of injuries sustained in such collision, the sum of $3,500. Upon these findings judgments were entered, and defendant appeals therefrom.

Defendant complains of various rulings of the trial court. He moved for a directed verdict at the close of all the evidence, for a judgment notwithstanding the verdict, and also for a new trial; all of which motions were overruled, and the rulings are assigned as error.

Plaintiffs' theory is that defendant came suddenly out from behind the hay truck for the purpose of passing it, which caused Gregory to swerve his car to the right to avoid colliding with defendant's auto; that in doing so he got off the pavement onto the shoulder, temporarily lost control of his car, which started slipping and swerving, the pavement and ground being wet at the time, and it ran into the hay truck. As a consequence Hugh Gregory and Ethel Gregory sustained personal injuries, while June Winchester, as before stated, was so injured that she died as a result. Plaintiffs claim that defendant was thereby guilty of negligence which was the proximate cause of the collision, and that they at the time were in the exercise of ordinary care for their own safety.

The only occurrence witnesses who testified were the two Gregorys, defendant Merriam, Rollo Eckoff, driver of the hay truck, and Alexander Wilson who was op-

erating the Transamerican Freight Lines truck. In addition there was read into the record the contents of a motion for continuance by the defendant, with the exception of one sentence therein which the court properly denied admission as it was a pure conclusion. The statements in the motion were those which it was claimed Whitlock, who was riding with defendant at the time, would testify to. Plaintiffs, to defeat the motion for continuance, admitted that Whitlock, if present, would testify as set forth in the motion, and the statements therein were accordingly accepted as his testimony.

The evidence as to the actual occurrence was conflicting. Gregory stated that it had rained on the day in question; that at the time of the collision water was standing on the pavement; that he saw the hay truck coming south while about a quarter of a mile from it, and that there was a large truck just behind it; that when about 150 or 200 feet south of the hay truck, a dark sedan came suddenly out from behind the large truck, came around the hay truck, and to avoid a collision he cut his car to the shoulder of the road; that when the sedan finally reached the front of the hay truck it was not over 50 feet from his car; that as he turned to evade it, his car started slipping and swerving; that he lost control, and after that did not know anything until he regained consciousness in the hospital. He further testified that the speed of the sedan at the time was 45 or 50 miles per hour. His wife testified that when about 300 yards from the hay truck, she noticed it, also a large truck that was just behind it, and that the latter was followed by a sedan in which were two men; that the sedan came out from behind the large truck, to the front of the hay truck, paused, and then came by the car in which she was riding; that her husband turned to the right and the car skidded on the shoulder, after which she did not remember any more.

Defendant testified that he passed the Transamerican Freight Lines truck at least 300 feet behind the hay truck, and that following him was an old Ford sedan and a light colored car; that after he had passed the hay truck, at about 40 miles an hour, and had gotten onto the right side of the highway pavement, he slowed down to 35 miles an hour; that after he had proceeded southerly some 600 feet he saw a car coming around a curve in the road some distance southerly; that its right wheels were off the pavement, a fact to which Whitlock drew his attention; that he noticed the driver of such car was in trouble, and that he slowed down until it went by him; that the car was traveling about 50 miles an hour, and that it passed him about 500 feet south of the hay truck; that he watched through the rear vision mirror and saw the light colored car still following him; that he noticed the Gregory car cross the cement slab and saw bales of hay in the air; that the Gregory car, after it passed him, still had its two right wheels off the pavement. Defendant drove to a filling station a short distance south, turned around and started back, and as he did so the driver of the light colored car stopped him and called his attention to the accident, and defendant then went to its scene in order to render aid if possible.

The statements of Whitlock, which it was admitted he would have made had he testified, were substantially the same as the testimony of Merriam. In addition he stated that he (Whitlock) asked Gregory how the affair happened, and that the latter replied that the hay truck had come over on his side of the pavement, crowded him off onto the shoulder, and sideswiped his car.

Eckoff, driver of the hay truck, deposed that he saw the Gregory car coming north when it was at least 1,000 feet away; that it was moving about 50 miles an hour, with both right wheels on the slippery shoulder,

and that the driver seemed to be trying to get back onto the pavement; that he watched the car continuously, and that when it was almost in front of the truck it got back upon the pavement, came across the cement and struck his truck; that defendant's car had passed some time before, and at the time of the accident was at least 1,000 feet south of the scene.

Wilson, who at the time was operating the Transamerican truck, stated that he saw the Gregory car coming north, going about 40 or 45 miles an hour, with two of its wheels off the cement slab; that a car came from behind and passed him and the hay truck; that such car was on its way on the right side of the pavement when he first noticed the Gregory car; and that when the latter car got opposite the hay truck it came abruptly across the road and struck the latter, causing it to upset and block the road.

There were no other occurrence witnesses to the actual collision. The owner of the hay truck was riding with the driver at the time, but was looking in another direction and did not see the collision or notice what happened just prior thereto.

It appears that while in the hospital Gregory gave a written statement to the coroner to the effect that the truck crowded him off the pavement and sideswiped his car. Gregory denies any recollection of so doing, and the attending physician testified that at such time he (Gregory) was in a dazed and mentally disturbed condition.

Upon such record of testimony defendant insists that the court erred in refusing to direct a verdict in his favor, as well as to enter judgment for him notwithstanding the findings of the jury. We think there was proof on the part of plaintiffs, which, taken with all reasonable inferences arising therefrom, tended to support and sustain their contentions, and where this is true the court may not direct a verdict, nor render

judgment *non obstante,* against the plaintiff; *Streeter v. Humrichouse,* 357 Ill. 234. The trial court ruled correctly upon such motions.

Defendant further urges that the motion for a new trial should have been sustained, asserting that the verdict is contrary to the manifest weight of the evidence.

The proof bearing upon the questions of defendant's negligence, plaintiffs' contributory negligence, and the proximate cause of the collision, was conflicting, and in our opinion submitted to the jury fair questions of fact upon such propositions, to be determined according to which witnesses were found to be worthy of belief; and in such situation the court is not warranted in substituting his own judgment for that of the jury, nor will a reviewing court set aside the verdict; *Carney v. Sheedy,* 295 Ill. 78.

Defendant also contends that the trial court erred in rulings upon the admission and rejection of evidence. We have examined these propositions and do not think the court erred therein.

Lastly, it is asserted that the verdicts are excessive.

The proof showed that Hugh Gregory sustained, as a result of the collision, a disfiguring scar across his temple about three inches in length; that at the time of trial he was still weak, pale and short of breath, with a fast pulse; that his blood condition remained abnormal; that he had not been able to work regularly, and the physician testified that it was problematical how long it would be before he recovered his usual state of health; that he was in the hospital for a considerable period, part of the time in a dazed condition, and that his hospital bill was $100.

Ethel Gregory, as a consequence of the occurrence, received a four-inch scar across her forehead which was a permanent disfigurement; her ankle was weak, and at times she could not walk normally; had fre-

quent dizzy spells which occasioned momentary unconsciousness, and was still under the care of her physician.

June Winchester was 17 years of age, attending business school, at home with her mother and stepfather, in good health, and was dutiful and obedient.

With such record of proof of damage we do not think it fairly can be said that the awards were excessive; *Deming v. City of Chicago,* 321 Ill. 341; *Gaddie v. Whittaker,* 344 Ill. 149.

Upon a consideration of the entire record we are of opinion that the case was fairly tried, and that the judgments are right.

*Judgments affirmed.*