Jessie Armster, Administratrix of Estate of Roy Armster, Deceased, Appellee, v. American Steel Foundries, Appellant, and John Lankster, Defendant.

Opinion filed March 2, 1942.

OEHMKE & DUNHAM, of East St. Louis, for appellant.

Irwin Walker, Philip G. Listeman and Ralph D. Walker, all of East St. Louis, for appellee; Whitnel, Browning, Listeman & Walker, of East St. Louis, of counsel.

Mr. Presiding Justice Stone delivered the opinion of the court.

The appellee, Jessie Armster, as administratrix of the estate of Roy Armster, deceased (hereinafter called the plaintiff) brought this action at law against American Steel Foundries, appellant (hereinafter designated as defendant) and John Lankster, to recover damages on account of the death of Roy Armster resulting from an injury to his person through the alleged negligence of the defendants on the premises of American Steel Foundries in East St. Louis, Illinois, on November 13, 1940. Upon a trial of the case before a jury, verdict was returned in favor of plaintiff and against both defendants in the sum of $5,500 upon which judgment was rendered. This appeal is prosecuted by American Steel Foundries alone.

American Steel Foundries manufactures steel castings and in the operation uses all kinds of scrap iron and steel, including steel railroad rails. It is necessary to break or cut the scrap, so that it may be put into melting furnaces and for that purpose steel railroad rails are broken to five foot lengths. Those engaged in this work used cold chisels, weighing about a pound and a half, twenty-four pound hammers and metal bars called rail bars, used with one end inserted in a bolt hole at the end of the rail to turn the rail, which is then broken by vibration. The rail bar in question in this case was an old Ford axle pointed at one end for the purpose, about four feet long and weighing ten or twelve pounds. The work of breaking these rails which required a crew of six men, was being done on an unenclosed lot about 200 by 300 feet, adjoining the plant of defendant company.

This work required special experience and the ordinary workmen regularly employed at the plant of defendant company did not do it. In October of 1940, there were some rails to be broken up and a man by the name of Louis Griffin who was experienced in this character of work was employed by the defendant company for this work. One of the controversial questions in this case, was whether the men employed in this work, among them the codefendant in the lower court, Lankster, were employed by Griffin, as an independent contractor, or were employed directly by defendant company.

Among other conditions precedent to employment in this particular work, was the passing of a medical examination. Among those who took the examination and who was an experienced rail breaker, was plaintiff's intestate Roy Armster. He did not pass the examination, but the evidence is to the effect that for at least several days prior to his injury, he came to the lot where the rail breaking was being done and worked with the crew engaged in that work, among whom was the defendant, Lankster.

Early on the morning of November 13, 1940, Armster was engaged at this work with the chisel and five or six rails had been broken. Lankster was working with the rail bar. The evidence is to the effect that it was the custom in this work, for the man handling the bar, to lay it down, or set it in the ground, until the crew was ready to turn a rail over again, and start the process of breaking. Armster was within an arm's length of Lankster, behind him and to his right. Without looking back Lankster tried to stick the bar into the ground, which was frozen, and it failed to stand up; not realizing he had injured anyone, he tried to stick the bar in the ground the second time and the pointed end of the bar struck Armster's foot. He had struck his foot the first time, without knowing it, and used more force the second time, and the bar penetrated

Armster's foot. Tetanus developed and the injured man died from the tetanus infection on November 24th.

Among other errors relied upon for reversal by defendant, it is assigned that the court erred in admitting improper and incompetent evidence offered by plaintiff. This is not argued in defendant's brief. Where error is assigned in the admission of incompetent evidence, and not argued and no reason assigned therein why such testimony was incompetent, it will be assumed to be waived and will not be considered by this court. *People's Nat. Bank of Monmouth v. Fernald,* 252 Ill. App. 5.

It is the theory of counsel for defendant, and is argued ably and at considerable length by them, that Lankster was not an employee of American Steel Foundries, but an employee of Louis Griffin, an independent contractor, and that the doctrine of *respondeat superior,* has no application to this case. They further contend that plaintiff's intestate was a licensee on the premises of defendant company and not an invitee and the only duty said defendant then and there owed him was not to injure him wantonly and wilfully.

Where the facts are undisputed the existence of the relationship of master and servant is for the court, but where from the pleadings and evidence such relationship is disputed, it is a question for the jury. *Watson v. Trinz,* 274 Ill. App. 379. There was ample evidence in the instant case, whereby the jury might well find that Lankster was an employee of the defendant company. He was required to make out a written application for employment; to undergo certain physical examinations; his rate of pay was fixed by defendant's employment agent, he was told where he was to be required to work and what character of work he was to perform. While he was at work, he was advised that it was necessary for him to have protection for his eyes and he was compelled to purchase a pair of goggles, the cost of which was deducted from his pay. He

was furnished with a copy of the United States laws applicable to the work he was to perform. He was required to use a time clock to indicate the time of his arrival at, and his leaving his work. He was paid by defendant's check. He used tools furnished by defendant, and used them in an essential and necessary part of its business.

If, as contended by defendant, plaintiff's intestate was a mere licensee and went upon defendant's premises for purposes of his own and not for any purpose connected with the business of defendant, plaintiff cannot recover without proof that defendant knowingly and wilfully injured the deceased. On the contrary if Roy Armster was on the premises at the time and place of the accident by the invitation, either express or implied of defendant, it owed him the duty to exercise ordinary care for his safety while upon said premises. *Pauckner v. Wakem,* 231 Ill. 276; *Kijowski v. Times Pub. Corp.,* 372 Ill. 311; *Purtell v. Philadelphia & Reading Coal & Iron Co.,* 256 Ill. 110. To come upon the premises under an implied invitation means more than a mere license, it means that the visitor is there for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on. *Pauckner v. Wakem, supra; Plummer v. Dill,* 156 Mass. 426, 31 N. E. 128; *Illinois Cent. R. Co. v. Hopkins,* 200 Ill. 122.

In the case of *Mallory v. Day Carpet & Furniture Co.,* 245 Ill. App. 465, cited by counsel for defendant, the plaintiff's intestate accompanied a servant of defendant from the theatre to the garage, where such servant was employed. His duties were to assist the man who had charge of the garage in taking care of cars there. His work appeared to be a mere accommodation. It was apparent that plaintiff's intestate was in the garage merely as a visitor and for purposes of her own. She was killed by an explosion there, and the Appellate Court held that the servant who brought her

there was not a servant of defendant with authority to invite deceased to the premises. There is a summary of Illinois cases on this proposition in this opinion but they are all cases where the party killed or injured was on the premises for purpose of his own. The case of *Pauckner v. Walkem, supra,* was cited with approval in the opinion of the court. The *Pauckner* case clearly draws the line of demarcation between those who are on premises for business of their own, and those who are there for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on. There the court said on page 279 of the opinion, ''It will be found that the distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming.'' The Supreme Court in this case distinguished the case they were considering from the case of *Murray v. McLean,* 57 Ill. 380, in which case the owners of the premises on which the party was injured knew nothing of his presence on the premises until after he was hurt, and this fact in a measure excused the owners from giving warning or taking other precautions to protect the party from injury.

It was shown beyond any question in the case at bar, that at the time plaintiff's intestate sustained the injury which resulted in his death, he was actually engaged in work that defendant conducted upon its property. He was working with a tool that was the property of the defendant. He was no idle curiosity seeker, or merely a visitor for purposes of his own. It was testified by the witness, Lankster, that deceased was working there the day previous and the day before that. He worked for about an hour on the morning that he was injured. Such being the case defendant could hardly be heard to say that it had no notice of

his presence on its premises and therefore only owed him the duty to refrain from injuring him wilfully and wantonly.

The question whether Armster was rightfully or wrongfully upon the premises was a question of fact. By their verdict the jury determined that factual issue in favor of plaintiff and we are not inclined to hold that their finding was contrary to the manifest weight of the evidence. Where a fair question of fact is raised by the proof, an Appellate Court will not set aside the jury's finding as being against the manifest weight of the evidence. *Summers v. Hendricks,* 300 Ill. App. 498; *Jones v. Esenberg,* 299 Ill. App. 551; *Gregory v. Merriam,* 294 Ill. App. 483. The question as to whether plaintiff's intestate was guilty of contributory negligence, was also a question of fact for the jury. *Collins v. Missouri-Illinois R. Co.,* 233 Ill. App. 545; *Brown v. Illinois Terminal Co.,* 237 Ill. App. 145, aff'd 319 Ill. 326, 150 N. E. 242; *McConkey v. Pennsylvania R. Co.,* 251 Ill. App. 299; *Bushu v. Cordera,* 257 Ill. App. 234.

Complaint is made that the verdict of $5,500 was excessive. Plaintiff's intestate was 47 years of age, in good health, experienced in a trade, and maintained a home for his wife. In an action for death from negligent act, there is no hard and fast rule by which damages can be computed and the verdict of a jury, unless the court can say that it was dictated by passion and prejudice, and it was not rendered in the exercise of their discretion and sound judgment, should be final. *Chicago City R. Co. v. Bohnow,* 108 Ill. App. 346. We are not constrained to hold that this verdict is excessive.

We are of the opinion that the court did not err in refusing to instruct the jury to find the issues in favor of defendant either at the close of plaintiff's case or at the close of all of the evidence, and that the court

did not err in denying defendant's motion for new trial or motion for judgment notwithstanding the verdict.

Finding no reversible error the judgment of the trial court will be affirmed.

*Affirmed.*