John Abbs, Minor, by Walter E. Abbs, father and next friend, and Walter E. Abbs, Appellees, v. Rob Roy Country Club, Inc., Defendant and Homer D. Pauley, Appellant.

Gen. No. 44,497.

Opinion filed May 18, 1949. Rehearing denied June 13, 1949.
Released for publication June 17, 1949.

James A. Dooley, of Chicago, for appellant.

Owens & Owens, of Chicago, for appellees.

Mr. Justice Lewe delivered the opinion of the court.

Defendant Homer D. Pauley appeals from a judgment for $4,000 entered on the verdict of a jury in an action to recover damages sustained by plaintiff's minor son John Abbs, hereinafter called plaintiff, as a result of falling from a tractor driven by defendant's employee and upon which plaintiff was riding. Defendant's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were denied.

In September 1943, defendant Pauley operated, under a lease, a golf course known as the Rob Roy Country Club, located at the Village of Mount Prospect, Cook county, Illinois, and employed one William Niemeyer, since deceased, as manager of the Club. Defendant used tractor-drawn mowers for cutting grass on the fairways of the golf course. The tractor

here involved was equipped with four large rubber-tired wheels. The operator's seat was located on the left side of the tractor between the rear wheels and was elevated about three and a half feet from the ground. On the right side and below the driver's seat was a small platform about three feet square. Attached to the tractor were five mowers arranged so as to extend out beyond the rear wheels of the tractor. Defendant's manager, Niemeyer, employed young boys to operate the tractor and mowers. Among the boys employed by Niemeyer was one James Rowader who drove the tractor after school hours. Frequently while engaged in grass cutting these operators would invite other boys to ride with them on the platform of the tractor beside the operator.

September 9, 1943, James Rowader, aged thirteen, invited plaintiff to ride with him on the tractor. As Rowader was driving the tractor and mowers into a bunker on the seventh fairway he made a left turn when, according to plaintiff's testimony, plaintiff was "thrown" from the tractor and struck by the cutting blades of the mowers, causing the injuries here complained of. At the time of the accident plaintiff was thirteen years of age.

Defendant's principal contentions are (1) that plaintiff entered defendant's premises as a licensee, and (2) that plaintiff did not sustain his burden of proof on the question of defendant's negligence.

James Rowader, called in behalf of plaintiff, testified in substance that during the summer of 1943, he rode on the platform of the tractor on an average of about twice a week with two other boys named Happy and Mueller, aged sixteen and eighteen, respectively; that on occasions while riding with Happy the witness drove the tractor; that he "learned to operate the tractor" by watching Happy and Mueller; that he had never driven a tractor prior to that summer; that he saw a boy named Richard riding on the tractor with

either Happy or Mueller; that the witness's ten-year-old brother also rode with him; that he operated the tractor about five times before the accident; and that plaintiff had ridden with him once before the accident occurred.

Rowader further testified that the club house has twelve windows facing the golf course; that the tractor is kept in a parking lot immediately back of the club house; that at about five p.m. on the day of the occurrence the witness, accompanied by plaintiff, told Niemeyer he was going to cut grass; that he left the club house and "we both got on the tractor at the same time"; that Niemeyer was standing at the windows in the club house as the witness and plaintiff boarded the tractor and proceeded down the fairways; that on the seventh fairway "we went into the trap and made a left turn and I came back out of the trap and as I happened to look over my shoulder I noticed that Johnny (plaintiff) was not on the platform, so I looked back and saw him on the ground in the middle of the trap. I stopped the tractor, went back, and saw he had been hurt. He had a long gash on the right side of his head. His lips were split wide open. I noticed one of his front teeth missing. I noticed his hand was scraped. He seemed dazed."

Plaintiff testified that before the accident he worked around the club caddying and hunting golf balls for about two or three years; that on the day of the accident he sat on the platform of the tractor and at times "I looked back to see how he (Rowader) was doing and to guide him a little"; that as Rowader turned into the bunker to cut the grass "the tractor jolted and I was thrown off into the mowers. Prior to that time I was sitting on the platform facing forward. My left hand was holding the metal rim of the driver's seat; there was no handle on the seat. One does not get a smooth ride on the tractor. It goes up and down and it is a rough jolting motion."

Defendant Pauley testified that he employed Niemeyer as manager of the Club; that the witness was employed by an aircraft company and left early in the morning and returned to the golf club, where he lived, at about five o'clock in the evening; that he employed Happy Becker and Ernie Mueller to cut the grass during the summer of 1943; that he did not see James Rowader operating the tractor at any time; that at no time during the summer of 1943 did he see more than one person on the tractor; that he did not give any permission to anybody to ride on the tractor, other than the man operating it; and that he did not "employ any thirteen or fourteen-year-old boy" to operate the tractor and mowers.

Mrs. Niemeyer, wife of the manager, testified that she never saw two people on the tractor at one time; and that during the summer of 1943 she did not see any "boys thirteen or fourteen years of age operating it."

Defendant argues that plaintiff merely went for a ride and not for any purpose connected with defendant's business. In support of his position defendant relies on *Darsch v. Brown*, 332 Ill. 592; *Milauskis v. Terminal Ry. Ass'n of St. Louis*, 286 Ill. 547; and *Pauckner v. Wakem*, 231 Ill. 276. The facts in the cases last cited are readily distinguishable from those in this case.

Plaintiff argues that defendant gained an economic benefit and advantage by Niemeyer's practice of having young boys ride on the tractor for the purpose of training them to operate it, thus making available at all times a number of boys to drive the tractor. Rowader's testimony is uncontroverted that he learned to drive the tractor by observing other boys as he rode with them. The evidence does not show that plaintiff at the time of the occurrence was riding on the platform of the tractor merely for pleasure. Moreover, it strongly tends to show that plaintiff and other boys rode on the tractor with the knowledge and consent

of Niemeyer. We think the jury could find that at the time of the accident plaintiff was riding on defendant's tractor at defendant's invitation. We therefore hold it was defendant's duty to exercise reasonable care for plaintiff's safety.

With respect to defendant's negligence, plaintiff's testimony discloses that at the time of the accident Rowader drove down an incline into a bunker at five or ten miles an hour and made a left turn, at which time plaintiff was thrown from the platform by the jolting motion of the tractor. Obviously Rowader's attention was fixed on his work since he testified that he did not see plaintiff fall from the tractor. The platform on the tractor was not designed to provide for a rider. To keep from falling off plaintiff was compelled to hold on to the metal rim of the driver's seat. The jury could properly consider the precarious position of plaintiff while riding on the platform at the speed at which the tractor was being driven over an uneven terrain and the fact that the tractor might have been stopped before plaintiff was struck by the mowers had Rowader in the operation of the tractor exercised reasonable care for plaintiff's safety. The question whether defendant was guilty of negligence under all the facts and circumstances is for the jury to determine. (*Philpott v. Parham,* 316 Ill. App. 278.)

Defendant complains of the giving of plaintiff's instructions numbers 8, 11 and 13. Criticism is leveled at instruction number 8 because of the omission of the word "intelligence" used in the phrase "that degree of care and caution which an ordinarily prudent person of the age, capacity, experience of the plaintiff would ordinarily use under the same or similar circumstances." In *Burns v. City of Chicago,* 248 Ill. App. 204, this court held that the words "capacity" and "intelligence" are interchangeable. Instruction number 11 is not objectionable because it states plaintiff's theory of the case. Defendant contends that instruc-

tion number 13 is defective because it leaves to the jury to ascertain what issues are material. In the recent case of *Schneiderman v. Interstate Transit Lines, Inc.*, 401 Ill. 172, the court held that a similar instruction was not objectionable.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.