Rosa Pearl Hilbert, Administrator of the Estate of Richard L. Hilbert, Deceased, Plaintiff-Appellant, v. Elbert E. Dougherty, Jr., Defendant-Appellee.

Gen. No. 61–O–19.

Fourth District.

February 26, 1962.

Rehearing denied March 27, 1962.

Clarence E. Partee, of Mt. Carmel, Leonard J. Dunn, of Frankfort, for appellant.

Maurice E. Gosnell of Gosnell & Benecki, of Lawrenceville, George Schafer, of Mt. Carmel, for appellee.

CULBERTSON, J.

This is an appeal from a judgment in favor of defendant, Elbert E. Dougherty, Jr., and as against plaintiff, Rosa Pearl Hilbert, as administrator of the estate of Richard Hilbert, deceased, entered in the Circuit Court of Wabash County on the jury verdict in favor of defendant Dougherty as well as a verdict in favor of the local utility company against whom the action had been instituted. Plaintiff filed a post-trial motion for judgment notwithstanding the verdict, and in the alternative, for a new trial as to the defendant Dougherty, which was denied by the Court prior to entry of judgment.

On appeal in this case plaintiff contends as a matter of law, the proximate cause of the death of plaintiff's intestate was the negligent acts of defendant, and that therefore, plaintiff is entitled to recover, irrespective of the verdict of the jury.

The record discloses that on August 10, 1959, plaintiff's intestate who was engaged in the tire repair business, was requested by defendant Dougherty to come to defendant's premises and repair the right front tire of a refrigeration truck. Defendant operated a wholesale milk route with the refrigeration truck, and about 3:00 p. m. that day plugged the refrigeration unit into the electrical current on a pole and started the unit running. He had cleaned out the truck and

gone into the house about 3:30. About 4:00 p. m. the decedent arrived and went to the truck. Thereafter, decedent was found lying next to the truck, with his left arm on the bumper of defendant's truck, and had been electrocuted. About 5:00 p. m., after the occurrence, with the electricity connected and the refrigeration unit in operation it was found that there were 400 volts in the truck when measured from the front bumper to the ground by a volt meter, and 10 volts when the unit was not operating. The ground conditions in front of the truck were moist and damp. The truck was on rubber tires.

Defendant had been in the wholesale milk distributing business about seven years before the occurrence, and had changed the truck but retained the van body from the original truck, but changed the refrigeration unit from a belt-driven to a semi-sealed one. The pole from which the electrical current was brought by the utility company was on the rear of defendant's lot, with a meter, fuse box, two three-plug receptacles, and a two-plug receptacle. These items, excluding the meter, belonged to defendant. The electrical current was brought to the pole by a three-wire service, supplying 220 volts of electricity to operate the refrigeration truck. The defendant's refrigeration unit on the truck used 220 volts of electrical current to refrigerate the truck, and was normally connected to the electrical current for about thirteen hours a day when not making runs. At the time of the occurrence the refrigeration truck of the defendant was not grounded in any way for electrical current, had no direct ground from the frame or the metal part of the truck to the ground itself, and had no third or neutral wire connecting any part of the metal part of the truck to the fuse box, and there was no direct ground at the fuse box. Only a two-wire cord was used between the truck and the service on the pole. Defendant testi-

fied that he didn't know anything about a ground wire or the necessity for a ground wire until after the occurrence when he was advised of such need by the utility men. The decedent left surviving his widow and a daughter.

The question to be resolved was whether or not defendant Dougherty was negligent. A special finding had been directed to the jury, "Do you find from the greater weight of the evidence in this case that E. E. Dougherty, Jr., was guilty of negligence at and immediately prior to the accident involved in this case, which proximately caused or contributed to cause the accident?" The jury answered, "No," with all twelve signatures of the jury appended thereto. The jury found that defendant was not guilty and judgment had been entered upon the verdict.

 On appeal in this case it is apparently the contention of plaintiff that the proximate cause of the death of plaintiff's intestate was the negligent use, handling, and control of electrical current by defendant in having no ground connections and by having defective or improper electrical installation of equipment which caused the death of plaintiff's intestate. Negligence does not become a question of law unless the evidence is such that all reasonable men would agree in their deduction from it; and that if from the facts bearing upon the question of negligence reasonable men of fair understanding might draw different conclusions, the question is one of fact, not of law, and must be submitted to the jury (Cascio v. Bishop Sewer & Water Co., 2 Ill App2d 378, at 383, 119 NE2d 531). Where the evidence of material facts —even a conceded state of facts—would cause fair-minded men of ordinary intelligence to differ as to conclusions to be drawn therefrom, negligence is still a question of fact for the jury (Minters v. Mid-City Management Corp., 331 Ill App 64, 71, 72 NE2d 729;

Jung v. Dixie Greyhound Lines, Inc., 329 Ill App 361, 363–364, 68 NE2d 627).

█ The evidence shows that during the seven-year-period when defendant ran his truck it continued to run satisfactorily, except for two occasions, and the truck apparently remained in the same condition during all the period in so far as electrical appliances were concerned. The electric motor was hooked up at least once each day during the time, and the motor ran from twelve to thirteen hours. The Public Utility Company moved the hookup twice. On the first occasion there was only one outlet on the board, in plain view, and there was a two-hole receptacle. On the second occasion the utility company's electricians again moved the hookup, the same two-hole receptacle was still on the board, and when the switch box was opened it could be observed by anyone looking into the box that only two wires were hooked up leading to the receptacle.

None of the electricians who worked on the electrical system ever mentioned to the defendant that there was anything wrong with it. Defendant had an electrician install a receptacle on the board in 1958. It was a three-prong plug and a three-hole receptacle, which was attached to the two-wire cord and the two-wire outlet from the switch box. No one from this organization said anything to the defendant, Dougherty, about the installation. An experienced and trained electrician worked on the truck about two weeks before the accident. The unit blew fuses and would not run. The electrician investigated the trouble, found it, repaired it, and advised defendant Dougherty that the unit was all right. He testified that he did not feel that there was a sufficient possibility of a reoccurrence that he should warn the defendant. After the accident when he was again called and found what had occurred he repaired the short and again ex-

pressed his opinion that there was no danger from the installation with the two-wire cord and no ground. He expressed an opinion that there would be no danger from it and stated that he did not suggest to defendant that he put in a ground rod before hooking up the unit. On the particular day in question the defendant himself had worked around the truck for an hour or more while it was hooked up, and had left it but half an hour before plaintiff's intestate arrived to repair the tire. He testified, specifically, that he had no knowledge of any necessity for a ground until the Coroner told him he should have one after the accident. Even the testimony of experts that a third wire was the proper method of installing 220 volt service, and that failure to ground was the cause of the electrocution, still left a question of fact for the jury on the issue of defendant's negligence under the facts (Martin v. Village of Patoka, 305 Ill App 51, 55, 27 NE2d 866).

▄ The question of whether or not defendant knew or in the exercise of ordinary care should have known that a dangerous condition existed on the evidence in the record, was one of fact for the jury. We have stated a number of times that a Court on appeal will not substitute its judgment for that of a jury where evidence is conflicting or reasonable men might draw different conclusions from it (Martin v. Village of Patoka, supra).

▄ Similarly, on the issue as to whether or not a motion for new trial should have been granted on the theory that the verdict was against the manifest weight of the evidence, where a fair question of fact is raised by the proof, the Court on appeal will not set aside the jury's finding as being against the manifest weight of the evidence (Armster v. American Steel Foundries, 313 Ill App 378, 40 NE2d 575; Bartels v. McGarvey, 331 Ill App 275, 73 NE2d 654).

Plaintiff in this cause had tendered sixteen witnesses and examined them at great length. The evidence for defendant was brief. There was no error in the introduction or denial of evidence, or in the giving or refusal of instructions. The verdict, therefore, on the record, should not be set aside, and entry of judgment consistent with such verdict was proper and should be affirmed.

Judgment affirmed.

HOFFMAN, P. J. and SCHEINEMAN, J., concur.