Kenneth Bangert, Plaintiff-Appellee, *v.* Vincent Nolan, Defendant-Appellant.

(No. 69-101;

Fifth District—December 9, 1970.

Hershey, Bliss & Beavers, of Taylorville, (Richard G. Hershey and Ronald W. Periard, of counsel,) for appellant.

Miley & Meyer, of Taylorville, (William J. Meyer, Jr., and Don E. Beane, Jr., of counsel,) for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff Kenneth Bangert brought his action for damages sustained by reason of injury caused by one Alfred Quinn, a farmhand in the employee of the defendant Vincent Nolan. The defendant has brought this appeal from a jury verdict in favor of the plaintiff in the amount of $30,000.00

The unusual facts of this case concern the relationship of three individuals. The plaintiff Kenneth Bangert, hereinafter called "Bangert", was a farmer who tilled his own land, tilled land that he leased from the defendant Nolan, hereinafter called "Nolan", and also had in effect at the time of the injury, October 20, 1966, a contract by and between himself and Nolan wherein Bangert and Nolan agreed to aid one another in their respective individual farming enterprises. The third individual is Alfred Quinn, a farmhand in the employee of Nolan, hereinafter called "Quinn".

Bangert and Nolan were neighbors. Bangert generally checked with Nolan every day to see what work Nolan wanted done. Also Bangert checked every morning to see if Nolan was all right. Bangert and Nolan exchanged work with Nolan's share of the work being actually performed by a farmhand supplied by Nolan. On this occasion the farmhand supplied was Quinn.

The injury occurred on October 20, 1966. Nolan owned a John Deere tractor and wanted a stalk lifter that Nolan had recently purchased attached to the tractor. It was during the attaching operation that the injury was sustained.

The stalk lifter was made to be attached to the side of the tractor but to accomplish this task it was necessary that the position of the front wheels of the tractor be changed by "narrowing" them. The tractor was made so that the distance between the two front wheels could be varied to fit the requirements of the user. The plaintiff and Quinn were engaged in changing the position of the front wheels when the injury occurred.

The front wheels of the tractor were on a steel axle which fitted into a metal casing. Holes extended through the axle and casing and by means of a bolt the axle and casing were connected. The bolt was approximately six (6) inches in length and the nut two (2) inches in diameter, the head was countersunk and slotted for a screwdriver. In attempting to remove the bolt plaintiff was injured.

On the day of the injury, Bangert went to Nolan's house and Nolan asked Bangert to narrow the wheels and attach the stalk lifter to the tractor. Quinn was present and Nolan said Quinn would help. The tractor and lifter were outside Nolan's house. At no time germane did Nolan leave his house.

Bangert testified that Nolan said, "Kenneth will you take Alfred out there to help you and get the stalk lifter on". Bangert agreed whereupon Bangert and Quinn proceeded outside. They jacked the tractor up. Bangert then put his big screwdriver in the slot in the bolt, gave Quinn a crescent wrench and told him to "get on the nut". Bangert provided both tools. When Quinn turned the nut Bangert could not hold the bolt with the screwdriver. The bolt, nut and tools all turned. Bangert then told Quinn "to hold it a minute", which Quinn denies, and Bangert turned and from his tool box obtained a ⅜" open end wrench and placed it on the screwdriver shaft. Quinn, without being directed by Bangert, then gave the crescent a jerk putting all his weight into it, and the open end wrench flew off and struck Bangert in the face causing the injury.

Immediately before the injury Bangert was standing to the rear of the front axle facing the front end of the tractor. Quinn was facing the rear of the tractor. The parties were facing each other over the axle and were about two (2) feet apart.

The complaint filed in behalf of Bangert alleged that defendant invited the plaintiff to come upon his premises and that injury resulted from the activities of Quinn, Nolan's employee. Defendant's amended answer contained Affirmative Defenses of Assumption of Risk and Fellow Servant Rule. The trial court denied Nolan's Post Trial Motion.

The defendant urges that the court erred in three particulars. First, in that complaint failed to establish a duty owed by the defendant to the plaintiff, second that because of the contractual relationship between the parties, plaintiff with defendant was either Master and Servant or an independent contractor and under either defendant is not liable as a matter of law and thirdly Bangert was contributorily negligent as a matter of law.

■■ First, is there a duty owed by the defendant to the plaintiff? We think that the defendant owed a duty of ordinary care to the plaintiff, and whether or not Nolan through his employee Quinn exercised ordinary care was a question of fact to be decided by the jury. The injury to the plaintiff in no way resulted from any unsafe condition of the plaintiff's land. Bangert contends that it resulted from Quinn's sudden and massive application of force to the crescent wrench without warning to Bangert. Quinn could have realized that some injury might result to Bangert from this action. There was evidence from which the jury could so conclude, and the fact that there was evidence from which the jury could have concluded that Bangert selected inadequate tools or could have told Quinn to wait until he was ready, since the details of the work were admittedly under Bangert's direction, is of no consequence; the jury had an opportunity to determine if Quinn could or should have foreseen the result of his act; the jury has concluded that Quinn did not act as a reasonably prudent person should have under all the circumstances, and this his failure to so act resulted in the injury complained of.

In a letter advising counsel of denial of the post trial motion, the trial court advised:

"It seems to the Court that Kenneth Bangert is a business invitee on the premises of Vincent Nolan and as such is entitled to be protected from the negligence of Nolan or his employees."

Both briefs are largely devoted to cases and authorities concerning the duties of a defendant in particular situations by which the parties were categorized and their duties correspondingly defined. Here the complaint alleged that "defendant specifically requested and invited plaintiff to come on his premises". The allegation was denied in the answer, and the first special defense alleged "plaintiff was an employee or servant of the defendant", which was denied in plaintiff's reply. During the course of the trial neither the court nor jury made any finding concerning plaintiff's status. No instruction was tendered or given in the form of those provided regarding owners and occupiers of land, I.P.I. 120, nor was any instruction tendered with reference to plaintiff's alleged status as an invitee. Defendant's burden of proof instruction was I.P.I. 21.03 and made no mention of plaintiff's status other than that

defendant had asserted affirmative defenses contending plaintiff was defendant's employee. The issues instruction tendered by defendant was I.P.I. 20.01; it made no mention of plaintiff's status other than the allegation that plaintiff was an employee as alleged in the affirmative defenses. At the instance of defendant the jury was instructed on assumption of the risk—employer—employee by I.P.I. 13.02; I.P.I. 13.01 was tendered and properly refused since I.P.I. 21.03 was given. The jury was also instructed on the fellow servant doctrine. Without objection, the jury was instructed, by I.P.I. 10.04, that it was the duty of defendant to use ordinary care for the safety of plaintiff, and on negligence by I.P.I. 10.01. Neither party here complains about any error in the giving or refusal of instructions.

■■ We prefer to treat this as the parties did on trial as a simple negligence action, with the special defenses, which the jury obviously did not believe were adequately proven. The broad rule of law which is applicable is stated in *Kahn v. James Burton Co.*, 5 Ill.2d 614 at 622, 126 N.E.2d 836 at 840.

"Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonable, probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. The duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity or interest, or the proximity of relationship but extends to remote and unknown persons."

Kahn, of course, involved the application of the doctrine of attractive public nuisance and many exceptions exist such as where the injured person is a volunteer, licensee or trespasser, in which case a lessor duty is owed. Plaintiff here however, was not found to fall into any of the excepted categories and the general rule as above stated in Kahn and in I.P.I. 10.04 is applicable.

■■ Defendant contends that the law on the liability of a landowner to an invitee is inapplicable to the record in this case and that the trial court was in error in ruling that plaintiff was a business invitee and therefore entitled to be protected from the negligence of Nolan or his employees, and that even if there was a duty to warn it has to be with respect to a foreseeable risk of injury. We have stated that Quinn could have realized that some injury might result to Bangert in the manner in which he applied a sudden and massive force without warning to plaintiff. The jury determined that Quinn should have foreseen. Where it can be reasonably foreseen that some injury might result from the negligent act complained of, it is not essential that the precise consequences which actually result should have been foreseen.

■■■ There is however adequate authority to support a finding in this case to the effect that plaintiff was an invitee on the land of defendant and that for that reason defendant owed him ordinary care. It is admitted that plaintiff was specifically requested and invited by defendant to work on defendant's tractor with Quinn. The fact that the injury did not arise out of the use, possession or condition of the land itself does not preclude plaintiff from recovery; he was clearly not a volunteer, licensee or trespasser, and we shall point out, was not an employee or independent contractor. *Augsburger v. Singer*, 103 Ill.App.2d 12, 242 N.E.2d 436; *Lambert v. Senne*, 343 Ill.App. 136, 98 N.E.2d 519; *Armster v. American Steel Foundries*, 313 Ill.App. 378, 41 N.E.2d 329 and *Abbs v. Rob-Roy Country Club, Inc.*, 337 Ill.App. 591, 86 N.E.2d 412, were all cases in which the injury did not arise out of the use, possession or condition of the premises and in which plaintiff was held to be an invitee and in which defendant owed the plaintiff the duty to exercise reasonable care. In *Lambert v. Senne, supra,* as in the present case, the plaintiff had the know-how, was in control of the work, furnished the tools, received no pay and was injured by the active negligence of defendant's employee. No distinction has ever been made in Illinois between the duty owed by the owner or possessor of land in a situation in which the injury was caused by the *active negligence* of the landowner or his employees and that caused by a defective condition of the premises. See Harper and James, The Law of Torts, Volume 2, Section 27.10 wherein the author states:

"\* \* \* it is now generally held that in cases involving injury resulting from *active conduct,* as distinguished from a condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor."

In *Ryan v. Chi. and N. W. Ry. Co.*, 315 Ill.App. 65 at 75, 42 N.E.2d 128 at 133, the First District Court quoted from Prosser on Torts:

"It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee."

Under the Illinois cases the owner or possessor generally owes a lesser duty to a licensee than to an invitee, so that it follows that the minimum duty owed an invitee is to exercise reasonable care to cause no injury by active conduct.

Next the defendant asserts that the contractual relationship of the parties must have been either as Master and Servant or as Independent Contractors and thus the defendant could not have been liable as a matter of law. We cannot agree. We are concerned with the status of

Bangert on October 20th, 1966. The contract between the parties in effect on the date of the injury states in part:

"The parties have * * * been furnishing work to each other * * * The parties * * * helping * * * with labor and machinery when called upon to do so * * * neither the parties * * * is indebted to either * * * the parties do hereby agree that said mutual work will *continue as long as parties herein desire* the same without charge * * *" Emphasis ours.

Bangert was a tenant farmer and a landowner himself on October 20, 1966. He was involved in the business of farming and had been for a number of years. He was not, by occupation, a mechanic, and had never had occasion to narrow or widen wheels before; but he knew how to do it. He was performing, at the request of defendant, an isolated task which he knew Quinn did not know how to do.

The contract between them was obviously to avoid any misunderstanding as to one becoming indebted to the other for either services or compensation. It was terminable at the option of either at any time. Nolan's own testimony best explains the situation, when he testified:

"I was willing to go get parts for some of his machinery. I would get gasoline for him. I didn't feel I had to do these things for him. Kenneth didn't have to do these things for me either."

Either party could cease lending neighborly gratuitous assistance whenever they chose and neither expected compensation for what they did for the other; this the contract made clear. There is no evidence that Nolan had any right to control Bangert with respect to narrowing the wheels. The relationship of the parties was disputed by the pleadings; the contention that Bangert was an employee was presented to the jury.

■■ It cannot be said that if one farmer helps another at the latter's request and invitation that there is always and necessarily created a relationship of Master-Servant or independent contractor. As we have pointed out, there is nothing in the record to preclude a finding that Bangert was an invitee on the date in question.

■■ Finally, we must explore defendant's contention that the plaintiff was contributorily negligent as a matter of law. The issue of contributory negligence is for the jury to decide and unless there is such a set of facts as would leave no other answer then the issue must remain a jury question. Neither the conduct of Quinn in jerking the crescent wrench without a warning to Bangert, nor Bangert's selection of the tools or lack of preparation for Quinn's action, present such a set of facts that reasonable men may not differ. Under the holding in *Pedrick v. Peoria & Eastern R. R. Co.*, 37 Ill.2d 494, 229 N.E.2d 746, the question of plaintiff's contributory negligence did not become one of law.

The question of proximate cause is also for the jury to decide. Reasonable people could have differences and the jury could well conclude that Quinn's jerking the wrench was the proximate cause of the accident. *Bolander v. Gypsum Engr., Inc.*, 87 Ill.App.2d 325, 231 N.E.2d 659.

Judgment affirmed.

MORAN and GOLDENHERSH, JJ., concur.