Maceo Coleman for the Use of Howard Haberman, Trading as Morton Clothiers, Appellee, v. American Sheet and Tin Plate Company, Appellant.

Gen. No. 38,638.

Opinion filed May 26, 1936.

KNAPP, BEYE, ALLEN & CUSHING, of Chicago, for appellant; HARLAN L. HACKBERT, of Chicago, of counsel.

CLARENCE A. SAMUEL, of Chicago, for appellee.

Mr. Justice John J. Sullivan delivered the opinion of the court.

This action upon an assignment of wages was brought July 18, 1935, in the name of Maceo Coleman, the assignor, for the use of Haberman, the assignee (hereinafter for convenience referred to as plaintiff) against defendant, American Sheet & Tin Plate Company, Coleman's employer. The case was tried by the court without a jury and judgment was entered September 9, 1935, against defendant for $63.90. This appeal followed.

Coleman, the assignor, is a married man, residing at Gary, Indiana. He was employed by defendant in one of its plants at Gary under a contract of employment entered into in that city. His employment was confined to that plant and all wages earned by him were paid to him there.

Plaintiff runs a clothing store on the south side of Chicago. His business is conducted exclusively in the State of Illinois. April 20, 1935, Coleman went into plaintiff's store and purchased clothing, executing as security for the purchase price a judgment note and an assignment of all wages earned or to be earned by him from defendant. The clothing was delivered to Coleman in Chicago and the transaction between him and plaintiff was carried on entirely in Chicago. Coleman defaulted in his payments for the clothing and judgment was confessed against him in the municipal court of Chicago upon the note he had given to plaintiff. June 19, 1935, notice of the assignment of Coleman's wages was served upon defendant at its Chicago office. On that date defendant was indebted to Coleman only for wages earned since June 1, 1935. The wages then due with the wages thereafter earned to the date of the filing of this suit are more than sufficient to satisfy plaintiff's claim.

Indiana statutes received in evidence in the trial court provide, in part, as follows:

"40–201. Assigning wages. The assignment of future wages, to become due to employees from persons, companies, corporations or associations affected by this act, is hereby prohibited, nor shall any agreement be valid that relieves said persons, companies, corporations or associations from the obligation to pay weekly, the full amount due, or to become due, to any employee in accordance with the provisions of this act; Provided, That nothing in this act shall be construed to prevent employers advancing money to their employees." (Burns 1933 Annotated Indiana Statutes—Acts 1899, p. 193. In force April 27, 1899.)

Other provisions of the Indiana statutes impose penalties for violation of the foregoing section (secs. 40–202, 40–203); require the signature of the employee's wife and her acknowledgment to an assignment of wages permitted under the act (sec. 40–208); and require notice to the employer within 10 days from the date of the assignment (sec. 40–209). Only sec. 40–201 is applicable to the issue presented here, the other sections, although in evidence, have value merely as showing the public policy of the State of Indiana.

This is the first time this Indiana statute and its effect upon purported assignments of unearned wages executed in Illinois by men living and employed in Indiana has been presented for consideration to a court of review in this State, and the issue presented by this appeal is purely a question of conflict of laws as to whether the rights of the parties are to be determined by reference to the law of Illinois or to the law, of Indiana.

Defendant contends that the purported assignment of wages was an attempt to assign a right arising under Coleman's contract of employment; that the assignability of any such right must be determined by reference to the law which governs that contract of

employment, namely, the law of Indiana, where Coleman lives, was hired, works and is paid; and that under the Indiana law the wages involved were not assignable and the attempted assignment did not vest in plaintiff any enforceable right against defendant.

Plaintiff's theory is that since the assignment of wages was executed in Chicago, Illinois law controls and the assignment in controversy is enforceable; and that the doctrine of comity should not be applied because the enforcement of the Indiana statute would be prejudicial to the general interests of the citizens of this State and contrary to good morals.

Under the law of Illinois wages to be earned in the future under an existing contract of employment are assignable and an assignment of unearned wages is valid, while under the law of Indiana the assignment of unearned wages is prohibited. Defendant insists that the assignability of unearned wages and the validity of an instrument by which, if assignable, such wages are attempted to be assigned are not only entirely distinct questions but that the rules of law applicable to these questions, developed under the principles of conflict of laws, differ from each other.

A careful examination of the cases and textbooks cited convinces us that the question of the assignability of unearned wages, as a right arising out of a contract of employment, is controlling here and should be determined by the same law which governs the contract of employment, which in the instant case is the law of Indiana. By its adoption of sec. 40–201 of its statutes, heretofore set forth, the State of Indiana determined as a matter of public policy that the future wages of its citizens were not assignable. In *International Text-Book Co. v. Weissinger*, 160 Ind. 349, where this statute was attacked as an unreasonable restraint on the power and right to contract, in sustaining the constitutionality of the act and declaring the reasons underlying the public policy of the State as expressed

in the statute, the court said at pp. 351–52–53–54 and 55:

"These sections do, unquestionably, limit and restrict in a very marked degree the liberty of the citizen to enter into contracts which, in the absence of the statute, he would have the right to make. By sec. 4 [now 40–201] he is absolutely disabled from making an assignment of future wages to be earned by him. Such a prohibition can be sustained only on the ground that some public interest is involved, and that it is of such a character as to render it a legitimate subject of legislative regulation or control. The wages of laborers have been the subject of legislative solicitude and action in this State for many years, and in a great variety of forms. . . .

"A large proportion of the persons affected by these statutes of labor are dependent upon their daily or weekly wages for the maintenance of themselves and their families. Delay of payment or loss of wages results in deprivation of the necessaries of life, suffering, inability to meet just obligations to others, and, in many cases, may make the wage-earner a charge upon the public. The situation of these persons renders them peculiarly liable to imposition and injustice at the hands of employers, unscrupulous tradesmen, and others who are willing to take advantage of their condition. Where future wages may be assigned, the temptation to anticipate their payment, and to sacrifice them for an inadequate consideration, is often very great. Such assignments would, in many cases, leave the laborer or wage-earner without present or future means of support. By removing the strongest incentive to faithful service,—the expectation of pecuniary reward in the near future,—their effect would be alike injurious to the laborer and his employer. It is clear that the object of the act of 1899, *supra,* was the protection of wage-earners from oppression, extortion, or fraud on the part of others, and from the conse-

quences of their own weakness, folly, or improvidence. We can not say that no just ground existed for such legislative interference for so commendable a purpose.

" . . .

"The act of February 28, 1899 (Acts 1899, p. 193), applies equally to all citizens, and is not subject to the objection of a partial or improper classification. The sections before us do not extend to wages which have been earned, but merely suspend the right to dispose of wages by assignment until they are earned. They render void an agreement into which no prudent man, ordinarily, would wish to enter."

From the language of that case, "he (employee) is absolutely disabled from making an assignment of future wages to be earned by him," the Supreme Court of Indiana, in our opinion, construed the statute as not merely rendering the employee incapable of making an assignment of his unearned wages but as making the unearned wages nonassignable.

Coleman's right to receive his future wages was of the essence of his contract of employment, which was entered into in Indiana and was to be performed in its entirety in that State. The rule that the assignability of a contractual right is determined by the law which governs the contract under which the right arises is stated in Beale's Conflict of Laws (1935, sec. 348.2), pp. 1251–52, as follows:

"Sec. 348.2. Assignability.—Whether a right under a contract can be transferred so as to give the transferee a right similar to that previously held by the transferor is determined by the law of the place where the contract to be transferred was made, not by the law of the place of transfer or assignment, since this is really a question of the effect of the original contract, not of the contract of assignment. It is so held whether the place of assignment is the same as the place of contracting and performance of the original

contract, or the same as the place of contracting only of the original contract, or the same as the place of performance only of the original contract, or different from both the place of contracting and the place of performance.''

We are not concerned with what plaintiff's rights may be against Coleman, but only with the question as to whether Coleman had a right in his unearned wages of such nature that it could be transferred to plaintiff. Whether such a right under his contract of employment was capable of effective assignment is determined by the law of the place of making that contract. If capable of effective assignment, then the question as to whether or not there has been an effective assignment and what the effect thereof is on the rights of the assignor and assignee as between themselves, depends on the place of assignment. (American Law Institute Restatement, Conflict of Laws, secs. 348–350.)

Differences in law do not necessarily constitute a sufficient basis for the assertion that the rule of a foreign State is contrary to the public policy of the forum. There is, rather, in the law of every jurisdiction a strong policy in favor of recognizing and enforcing rights and duties validly created by a foreign law. (Beale's Conflict of Laws, 1935 ed., p. 1651.)

That the Indiana statute in question is not entirely obnoxious to the public policy of Illinois is evidenced by the recent enactment of legislation in this State (Ill. State Bar Stats. 1935, ch. 48, ¶ 22, sec. 4), limiting the amount of an employee's wages collectible under an assignment to 25 per cent. For many years the policy of this State to protect salaries of wage earners has been exemplified in our statute (Ill. State Bar Stats. 1935, ch. 52, ¶ 22, sec. 4), affording nonresident debtors the same exemption of their wages from garnishment as is allowed them by the law of the State in which they reside.

We are impelled both as a matter of comity and in consonance with the ''full faith and credit'' clause of the federal Constitution (Art. IV, sec. 1) to give effect to the Indiana statute as a complete defense to plaintiff's claim. A learned exposition of the doctrine of comity and the ''full faith and credit'' clause is found in *Bradford Electric Light Co. v. Clapper,* 286 U. S. 145, in which the reasoning of the court and the conclusions reached are peculiarly applicable to this case. There the court said at pp. 154–55–58–60–61–62:

''But the conflict here is between the laws of two States; and the Company in setting up as a defense a right arising under the Vermont statute, invokes Art. IV, sec. 1, of the Federal Constitution, which declares that 'full faith and credit shall be given in each State to the public acts . . . of every other State.' That a statute is a 'public act' within the meaning of that clause is settled. *Modern Woodmen of America v. Mixer,* 267 U. S. 544, 550, 551; *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389, 393. See *Tennessee Coal, Iron & R. Co. v. George,* 233 U. S. 354, 360; *Chicago & Alton R. Co. v. Wiggins Ferry Co.,* 119 U. S. 615, 622. A federal court sitting in New Hampshire is bound equally with courts of the State to observe the command of the full faith and credit clause, where applicable. The precise question for decision is whether that clause is applicable to the situation here presented.

''. . .

''The relation between Leon Clapper and the Company was created by the law of Vermont; and as long as that relation persisted its incidents were properly subject to regulation there. For both Clapper and the Company were at all times residents of Vermont; the Company's principal place of business was located there; the contract of employment was made there; and the employee's duties required him to go into New

Hampshire only for temporary and specific purposes, in response to orders given him at the Vermont office. The mere recognition by the courts of one State that parties by their conduct have subjected themselves to certain obligations arising under the law of another State is not to be deemed an extra-territorial application of the law of the State creating the obligation.

. . . .

"It is true that the full faith and credit clause does not require the enforcement of every right conferred by a statute of another State. There is room for some play of conflicting policies. . . . But the Company is in a position different from that of a plaintiff who seeks to enforce a cause of action conferred by the laws of another State. The right which it claims should be given effect is set up by way of defense to an asserted liability; and to a defense different considerations apply. Compare *Home Ins. Co. v. Dick,* 281 U. S. 397, 407, 408. A State may, on occasion, decline to enforce a foreign cause of action. In so doing, it merely denies a remedy, leaving unimpaired the plaintiff's substantive right, so that he is free to enforce it elsewhere. But to refuse to give effect to a substantive defense under the applicable law of another State, as under the circumstances here presented, subjects the defendant to irremediable liability. This may not be done. Compare *Modern Woodmen of America v. Mixer,* 267 U. S. 544, 550, 551; *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389; *Royal Arcanum v. Green,* 237 U. S. 531. See also *Western Union Telegraph Co. v. Brown,* 234 U. S. 542; *Atchison, T. & S. F. Ry. Co. v. Sowers,* 213 U. S. 55, 69.

"Moreover, there is no adequate basis for the lower court's conclusion that to deny recovery would be obnoxious to the public policy of New Hampshire. No decision of the state court has been cited indicating that recognition of the Vermont statute would be re-

garded in New Hampshire as prejudicial to the interests of its citizens. In support of the contention that the provision of the Vermont Act is contrary to the New Hampshire policy, it is urged that New Hampshire's compensation law is unique among workmen's compensation acts in that it permits the injured employee to elect, subsequent to injury, whether to bring a suit based upon negligence or to avail himself of the remedy provided by the Act; and that the legislature of New Hampshire has steadily refused to withdraw this privilege. But the mere fact that the Vermont legislation does not conform to that of New Hampshire does not establish that it would be obnoxious to the latter's public policy to give effect to the Vermont statute in cases involving only the rights of residents of that State incident to the relation of employer and employee created there.''

Where a contract of employment is made and is to be performed in one State, the substantial rights of the parties thereunder, including the transferability of the right of the employee to his wages to be earned in the future, is determined by the law of that State, regardless of where the parties may litigate their differences. Future wages were not assignable under the Indiana statute, which, in our opinion, we are bound to recognize and enforce. Therefore, Coleman's attempted assignment to plaintiff of his future wages transferred no rights against defendant.

We have carefully considered the other points urged and have examined the numerous authorities cited, but in the view we take of this cause we think that further discussion would only unnecessarily lengthen this opinion.

For the reasons indicated the judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*

SCANLAN, P. J., and FRIEND, J., concur.