William Arthur Krantz, a Minor, by James Ivan Krantz, his Father and Next of Friend, Plaintiff-Appellee, v. Harry Nichols, and Anna Nichols, Executrix of the Estate of Harry Nichols, Deceased, Defendant-Appellant.

Term No. 56–F–4.

Fourth District.

July 21, 1956.

Released for publication August 7, 1956.

Wham and Wham, of Centralia, and Miller and Pfaff, of Salem, for defendant-appellant.

Raymond O. Horn, of Salem, for plaintiff-appellee.

JUSTICE BARDENS delivered the opinion of the court.

Defendant appeals from two judgments totaling $20,000 entered on jury verdicts in a case involving injury to a five-year-old boy while riding on a tractor being driven by defendant Harry Nichols. Judgments in favor of the boy for $15,000 and his father in the sum of $5,000 were entered by the lower court. Defend-

ant's post trial motions were overruled. These motions pertain principally to the question of the degree of negligence required to be proved by plaintiff under the circumstances presented in this case. Rulings on these motions and questions regarding instructions and alleged improper conduct in final argument are raised on this appeal. The defendant-driver, Harry Nichols, died before the case came to trial and his wife as executor of his estate was substituted as defendant, but the case proceeded under its original title.

The evidence as to the circumstances surrounding the status of the minor upon defendant's premises and his injury may be summarized substantially as follows: The family of plaintiff lived on a farm across the road from the defendant's farm. William, the five-year-old boy, had often been on defendant's premises and was regarded with affection by defendant. On the morning of the day of the accident, October 19, 1953, the minor was brought over to Nichols' home by his mother who was going to the store and who asked if the minor could stay until she returned. Mr. Nichols was going to the field to haul corn and the minor said that he was going with him. Both went to the field about one-quarter of a mile from the house where Mr. Nichols' son was picking corn, the minor riding in the wagon pulled by defendant on a tractor. Mr. Nichols was picking up corn where he had shucked it off the end rows; the minor asked to hold the sack and did so for a little while, then told Mr. Nichols to let him pick up the corn because he was closer to the ground and Mr. Nichols would not have to bend over. They picked up about 12 sacks of corn that morning, then returned to the house, the boy riding in the wagon. When the minor's mother came for him Mr. Nichols told the boy to tell his mother that he was going to stay for dinner; that he had earned his dinner. This arrangement was satisfactory to the mother and the boy did stay for

dinner. After dinner Mr. Nichols sat down to rest and the boy went home. In a little while Mr. Nichols went out to the barn to start unloading the wagon when the boy came back again and stated he was going out to the field with Mr. Nichols. They went to the field, the minor again riding in the wagon, and picked up about two sacks of corn. When Mr. Nichols determined that it would not be necessary for him to stay in the field any longer because his son would finish up the picking, he left the wagon in the field and started home on the tractor. The boy wanted to drive the tractor, but Nichols would not let him. Since it was hot, he told him to get up behind and stand on the tow bar and hold the seat and ride in. The tractor was a small Farmall Allis Chalmers without fenders. The tow bar was a flat iron bar used to hook on farm implements which extended out from the back of the tractor in a semi-circle between the wheels. As they approached the barn at about five miles per hour defendant heard the boy scream and stopped the tractor. He found that the boy's foot had been caught and torn between the brake drum and the tire. As a result of the injury the leg was subsequently amputated six inches below the knee.

A review of the pleadings is necessary to a full understanding of the questions involved. The complaint was in two counts, Count I of which was on behalf of the minor and Count II on behalf of his father. Both counts alleged that defendant owned a farm tractor on which gears and other moving parts were exposed; that defendant, with knowledge of the danger, negligently and carelessly invited the minor plaintiff to ride on the tractor; that the defendant in so doing subjected the minor to extraordinary danger; that the defendant was negligent in the operation of the tractor as well as negligent in putting the minor in a place of extraordinary danger. Defendant filed motions to dismiss or make the complaint more specific

on the grounds that the complaint failed to show that the minor was a business invitee, but did show that the minor was a guest under Section 58–A of the Chapter 95½ [Ill. Rev. Stats. 1955] on Motor Vehicles and, therefore, the complaint must allege wilful and wanton misconduct. This motion was overruled and defendant filed an answer denying the material allegations. The answer also set up two additional defenses (1) alleging that the minor was a guest under the Motor Vehicle Act and (2) a social guest on the defendant's premises and that the sole duty of the defendant was not to wilfully or wantonly injure said minor. On motion, the court struck the defense under the Guest Act, but upheld the defense based upon plaintiff's alleged status as a licensee. This latter defense was answered by the plaintiff with denials.

■■ In our view the controlling issue in this case lies in the consideration of the defendant's additional defense alleging that plaintiff was a licensee on defendant's premises. We find that the law is well settled that a social guest is treated as a licensee and not an invitee and therefore must prove wilful and wanton misconduct in order to recover against the possessor of the land. Ellguth v. Blackstone Hotel, Inc., 408 Ill. 343, 347, 97 N.E.2d 290; Biggs v. Bear, 320 Ill. App. 597, 51 N.E.2d 799. See also Dent v. Great Atlantic & Pacific Tea Company, 4 Ill.App.2d 500, 124 N.E.2d 360. We have carefully examined the evidence on this issue and feel that it manifestly established the minor's status as a social guest. It is true the boy assisted in picking up corn and was said by defendant to have "earned his dinner." But his being with defendant during the day was essentially for his own entertainment, and the work performed was as a volunteer and resulted in no real benefit to defendant. Therefore, under the evidence presented in this case, we conclude that plaintiff's status in the legal sense remained that of a licensee rather than an invitee and he was

41

required to allege and prove wilful and wanton misconduct on defendant's part. We have held that, in the absence of a showing of an attractive nuisance, the rule is applicable to children. Jones v. Schmidt, 349 Ill. App. 336, 110 N.E.2d 688.

■ It is true that instructions given on behalf of the defendant incorporated in them the proposition that plaintiff was required to prove wilful and wanton misconduct if the jury found that the minor plaintiff was a social guest or licensee. However, the instructions on behalf of the plaintiff did not incorporate this element. Plaintiff's instruction number 9, in particular, was a mandatory instruction which completely omitted the question of the status of the minor and required only the want of due and ordinary care on the part of the defendant, Harry Nichols. In view of our conclusion on the minor's status, this instruction was erroneous and, being mandatory, could not be cured by other instructions. Hanson v. Trust Co. of Chicago, 380 Ill. 194, 43 N.E.2d 931. This instruction alone requires a reversal and remandment of the cause.

The application of the Guest Statute in the instant case is therefore immaterial since our conclusion as to the minor's status raises the same standard of proof of defendant's misconduct as that required under the Guest Statute.

■ Inasmuch as the cause is to be remanded, we feel that two matters raised by the briefs and arguments require some discussion for guidance upon retrial of the cause. The first pertains to the form of verdicts and judgment. As we previously stated, after the death of the original defendant Harry Nichols, his wife as executor was substituted and the court ordered the title of the cause to be continued in the name of Harry Nichols. Chapter 110, Ill. Rev. Stat., 1953, par. 178. However, in the framing of the instructions and the forms of verdict, the name of the real and substituted defendant should have been used rather than

the name of the deceased defendant. The judgment also should have been against the substituted defendant because the form of the judgment against an estate is different than that against an individual.

■ The second matter pertains to final arguments. Plaintiff's attorney stated upon final argument, "I want to make one final and unusual request, we have asked for $25,000.00 for William Krantz and $10,000.00 for Ivan Krantz. On my own motion and for reasons which I do not wish to disclose I am asking for only $15,000.00 for William Krantz and $5,000.00 for Ivan Krantz." We do not know of any rule that prevents an attorney from asking for a specific amount based upon the evidence, but when the request is couched in language as shown above, it goes beyond the record and could mislead the jury.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

SCHEINEMAN, P. J., concurs.

CULBERTSON, J., dissents.

I cannot agree with the majority opinion. Under the facts in this case this five-year-old infant was placed in a position of danger on a farm tractor with moving parts of the gears exposed. The relationship of the minor plaintiff and the defendant was obviously one for mutual benefit, and it is inconsistent, both with the facts and the law, to conclude that defendant was not required to exercise ordinary care and caution for the safety of the child (Armster v. American Steel Foundries, 313 Ill. App. 378).

In the case of Abbs v. Rob Roy Country Club, Inc., 337 Ill. App. 591, the Court, in a comparable case where a minor plaintiff was invited to ride on a platform on a tractor and was thrown off and struck by moving parts of the motors, concluded that it was defendant's

43

duty to exercise reasonable care for plaintiff's safety since the jury could conclude that at the time of the accident plaintiff was riding on defendant's tractor at defendant's invitation. In the case before us there was obviously a question of negligence which the jury could pass on, and a duty to the infant plaintiff other than simply one calling for freedom from wilful and wanton misconduct.

I do not believe that there was any reversible error in the record and that the judgment should have been affirmed.