## Peter J. Cunag, Plaintiff-Appellee, v. Mark A. McCarthy, Defendant-Appellant.

### Gen. No. 48,877.

First District, First Division.

May 27, 1963.

Beverly & Pause, of Chicago (Robert O. Duffy and Frank J. Pause, of counsel), for appellant.

Romano, Rice & O'Brien, of Chicago (James B. Rice, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury case, in which defendant, Mark A. McCarthy, appeals from a $4,000 verdict and judgment for plaintiff. The trial court denied the mo-

tions of defendant for a directed verdict, for judgment notwithstanding the verdict, and for a new trial.

Defendant introduced no evidence. Plaintiff testified that he and his family were invited to spend the week end of July 4, 1958, on the farm owned by defendant in Michigan. The purpose of the visit was "to enjoy the week end," and also to help defendant's son, Don McCarthy, to clear an area of scrub oak trees "for his father [defendant]." When plaintiff and his family arrived at the farm, they were met by defendant and his son. After some conversation, defendant "suggested that we go ahead and borrow the tractor from the neighbor and get to work cleaning up the scrub oaks along their property line before it got too hot." After borrowing the tractor, Don drove it back to defendant's farm, with plaintiff riding in the rear. Defendant walked back to his farm, about one block distant.

Upon arriving at the farm, defendant showed plaintiff "how to chop the roots of these scrub oaks," and "how to tie the chains around them." Defendant's son Don operated the tractor, pulling the scrub oaks out of the ground. After several hours, while all three were working in the field, Don McCarthy said to plaintiff, "You've been doing the hard work. Would you like to drive the tractor awhile, and I'll do the chaining?" Plaintiff agreed. As plaintiff, a salesman, had not theretofore driven a tractor, he asked Don to show him how to run it. Plaintiff testified, "It did not look difficult. So, [Don] showed me how to shift. [The tractor] had a steering wheel, and I figured just like driving a car."

About two hours later, Don attached the chain to a tree and told plaintiff to "take it down to the end of the property," and "put it on the brush pile." Plaintiff then drove down to the end, "and started to turn in, and there was a hill a little bit high." He shouted

39

back to Don, "In here?" and Don answered, "Yes, take it in." Plaintiff testified, "Well, so, I accelerated the [tractor] and started going up, and it kind of chugged and started a little bit, and I gave it a little bit more throttle. . . . And [the tractor] went forward, and suddenly lurched up and come over this way (indicating). At that point, I was off balance, and I tried to jump, but I couldn't clear it. I fell on the ground, and the tractor fell on top of me."

■ Since plaintiff's injuries occurred in Michigan, the substantive law of Michigan governs liability. (Restatement, Conflict of Laws, §§ 377, 378 (1934); Christiansen v. Graver Tank Works, 223 Ill 142, 79 NE 97 (1906); Mithen v. Jeffery, 259 Ill 372, 102 NE 778 (1913); Butler v. Wittland, 18 Ill App2d 578, 153 NE2d 106 (1958).) No questions are raised as to the facts of the occurrence or plaintiff's injuries. Defendant's principal contention is that, under Michigan law, plaintiff was a "social guest" or "licensee" while present on defendant's land; and that as such, defendant would be liable to him only for injuries occasioned by willful and wanton misconduct. Both parties concede that the trial court held that, under Michigan law, plaintiff was an "invitee," and that defendant would be liable for injuries caused by want of ordinary care.

The Michigan Supreme Court has defined an "invitee" as a person who, "for the purposes connected with the business conducted on the premises, enters any place of business"; a possessor of land owes to an "invitee" the duty "to use the care that an ordinarily careful and prudent person would use under the same or similar circumstances to avoid causing injury." Perl v. Cohodas, Peterson, Paoli, Nast Co., 295 Mich 325, 294 NW 697, 700, 701 (1940); Goldsmith v. Cody, 351 Mich 380, 88 NW2d 268 (1958); cf. 65 CJS, Negligence, § 43(1), p 508 (1950); Prosser, Torts, § 78 (2d Ed) (1955).

40

Plaintiff argues that since he literally received an "invitation" to defendant's farm, he was entitled to the "invitee" standard of care, rather than the lesser standard accorded a "licensee." In support of this theory, he argues that various Michigan cases extend the legal definition of "invitee" to his case: e. g., "Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware." Samuelson v. Cleveland Iron Mining Co., 49 Mich 164, 13 NW 499, 501 (1882).

The difficulty with this view is that it equates the legal meaning of invitation with the dictionary definition. Each of the cases plaintiff cites involves some aspect of commercial relations, and we are referred to no Michigan case treating a person in the position of plaintiff as an "invitee." On the other hand, we find no Michigan case in which the problem of the social guest has squarely arisen. The prevailing common law view in other jurisdictions, including Illinois, is that "a social guest, however cordially he may have been invited and urged to come, is not in law an invitee, but is nothing more than a licensee, to whom the possessor [of land] owes no duty of inspection and affirmative care to make the premises safe for his visit." (Prosser, Torts, § 77, p 447 (2d Ed) (1955).) The social guest "is an invitee who is not an invitee; . . . the great weight of Anglo-American authority classifies him as a bare licensee, even though he was expressly invited." (2 Harper & James, The Law of Torts, § 27.11, p 1477 (1956).) See, e. g., Southcote v. Stanley, 1 Hurl & N 247, 156 Eng Rep 1195 (1856); Krantz v. Nichols, 11 Ill App2d 37, 135 NE2d 816 (1956); Comeau v. Comeau, 285 Mass 578, 189 NE 588 (1934); Greenfield v. Miller, 173 Wis 184, 180 NW 834 (1921); cases collected in annotation, 25

41

ALR2d 598 (1952). The only jurisdictions which have considered the question explicitly and have declined to follow the general rule appear to be Louisiana and Ohio: see Alexander v. Gen. Acc. Fire & Life Assur. Corp., 98 So2d 730 (La 1957); Scheibel v. Lipton, 156 Ohio St 308, 102 NE2d 453 (1951).

■ ■ Since no Michigan appellate court has yet decided the question, we must assume that Michigan would follow the common law view, as understood by Illinois courts. For we cannot, in advance of its announcement by the courts of Michigan, "assume that the common law in that State will be declared to be different from the common law as construed in [Illinois]." (Royal League v. Kavanagh, 233 Ill 175, 184, 84 NE 178 (1908).) Accordingly, we conclude that Michigan would regard plaintiff as a social guest, and as such, to be accorded the standard of care appropriate to a "licensee" rather than that appropriate to an "invitee." Krantz v. Nichols, 11 Ill App2d 37, 135 NE2d 816 (1956); Biggs v. Bear, 320 Ill App 597, 51 NE2d 799 (1943).

■ Defendant assumes that Michigan law limits recovery by a "licensee" to injuries occasioned by willful and wanton misconduct. This is so only as to the maintenance of premises in a defective or dangerous condition. See, e. g., Hargreaves v. Deacon, 25 Mich 1; Douglas v. Bergland, 216 Mich 380, 185 NW 819 (1921). Another rule applies when the injuries of the "licensee" result from the active negligence of the host. ". . . [A]fter the owner of premises is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care he should know of their presence, he is bound to use ordinary care to prevent injury to them arising from active negligence." Polston v. S. S. Kresge Co., 324 Mich 575, 37 NW2d 638, 641 (1949); Wieghmink v. Harrington, 274 Mich

42

409, 264 NW 845 (1936); Schmidt v. Michigan Coal & Mining Co., 159 Mich 308, 123 NW 1122 (1909).

■ As these terms are used in cases involving the liability of a possessor of premises to one injured thereon, "active or affirmative negligence" may be defined as negligence occurring in connection with activities conducted on the premises, and "passive negligence" as negligence which causes danger by reason of the physical condition of the premises. It is only the latter which must be willful and wanton to result in liability. Garstka v. Republic Steel Corp., 294 Mich 387, 293 NW 691 (1940); Anderson v. Welty, 334 SW2d 132 (Mo 1960); cf., 2 Restatement, Torts, § 341 (1934); 2 Harper & James, The Law of Torts, § 27.10 (1956); Prosser, Torts, § 77 (2d Ed) (1955).

■ Having set forth what we believe to be the applicable law, we now consider whether defendant was entitled to a directed verdict or judgment n. o. v. "These motions present only a question of law as to whether, when all the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to plaintiffs, there is a total failure or lack of evidence to prove any necessary element of plaintiffs' case." (Merlo v. Public Service Co., 381 Ill 300, 311, 45 NE2d 665 (1943).) We are of the opinion that plaintiff adduced sufficient evidence to go to the jury on the question of "active or affirmative" negligence. From his testimony, the jury could conclude that plaintiff was completely uninformed as to the operation of a farm tractor prior to his visit to defendant's farm, and that his only information as to the tractor's characteristics was derived from defendant's son. Whether defendant and his son knew, or should have known, of the danger of the tractor overturning when operated on an incline, was likewise a question for the jury; plaintiff testified that defend-

43

ant had told him that he [defendant] had once been a farmer in Southern Illinois, and it was implied in plaintiff's description of the borrowing of the tractor that either defendant or his son, or both, had used it before.

Even were it argued that failure to warn plaintiff about the characteristics of the tractor could not, in itself, be active negligence, such failure to warn coupled with affirmative conduct in directing plaintiff into a dangerous area could constitute active negligence. Whether the behavior of defendant and his son was negligent was thus a question for the jury, and defendant's motions were properly denied.

Defendant also argues that there is no evidence in the record from which a jury could conclude that defendant's son was his agent with respect to the operation of the tractor and the clearing of the scrub oaks. We recognize that such an agency is a prerequisite to liability on the part of defendant. Reference to the facts recited above sufficiently indicates that the jury might believe, from plaintiff's testimony, that defendant's son was acting in defendant's behalf and for his purposes and with his acquiescence throughout the entire clearing operation. In addition, plaintiff indicated that defendant himself was present during the removal of the scrub oaks, participating along with the others.

Finally, defendant contends that there is no evidence in the record which tends to prove the cause of the tractor's overturning. A consideration of plaintiff's description of the tractor, the incline, and the accident itself, sufficiently indicates that a jury could reasonably infer from this testimony that the cause was the tractor's instability when operated on an incline.

We conclude that plaintiff adduced enough evidence to go to the jury, and that defendant's motions for directed verdict and judgment n. o. v. were

44

therefore properly denied. There was no "total failure or lack of evidence to prove any necessary element of plaintiffs' case." (Merlo v. Public Service Co., 381 Ill 300, 311, 45 NE2d 665.) Since neither the abstract nor record include the oral instructions given to the jury, we will assume that the trial court did not err in this respect. The People v. Robinson, 27 Ill2d 289, 292 (1963).

Therefore, as we find no reason for a new trial, the judgment is affirmed.

Affirmed.

BURMAN, PJ, concurs.

ENGLISH, J, dissenting:

I agree with the majority's conclusion (contrary to the ruling of the trial court) that the evidence shows plaintiff to have been a social guest or licensee rather than an invitee. That being so, the general rule is that liability of the defendant would have to be predicated upon wilful or wanton misconduct if the Michigan common law were to be considered the same as that declared by the Illinois courts. (Biggs v. Bear, 320 Ill App 597, 599, 51 NE2d 799; Krantz v. Nichols, 11 Ill App2d 37, 135 NE2d 816; Royal League v. Kavanagh, 233 Ill 175, 180, 84 NE 178.)

Cited by the majority as departing from this rule are some Michigan decisions which employ language to the effect that a host is liable to his licensee for injuries to the latter caused by the host's "active negligence." The majority then decide that there was evidence of defendant's "active negligence" in his failure to warn plaintiff of a "tractor's instability when operated on an incline," and in defendant's son's direction to plaintiff to go into "a dangerous area" when he told plaintiff to drag a tree to the end of the property and put it on the brush pile. I cannot

45

give any weight to the latter part of this proposition as a basis for liability under the facts of this case, and I don't believe the majority do either, because in stating their conclusion as to proximate cause, they say only that the jury could properly have found that the cause of the accident was the tractor's instability when operated on an incline. In this regard it is important to note that the only allegation of negligence contained in the Statement of Claim is that defendant failed to warn plaintiff of the "inherently dangerous characteristics of the tractor." *

The majority must rely, therefore, on the proposition that defendant's active negligence consisted of his failure to warn plaintiff of this instability characteristic of a tractor. I cannot concur, because to me "failure to warn" and "active negligence" are terms which stand for contradictory concepts.

We should remember that we are considering an exception to the basic principle that a licensee or social guest must take things as he finds them. The exception is that the licensee may recover for wilful or wanton conduct, the setting of a trap, or active negligence on the part of the host. In this context I should think it clear that active negligence must involve an affirmative act on the part of the host which causes injury to his guest. Such an act of negligence, affirmative in character, was the basis for recovery in each of the cases cited in the majority opinion in support of its finding that there is in this case evi-

---

* There was also an allegation that a characteristic of the tractor was that if operated on an incline there was grave danger it would overturn. At the close of the evidence this allegation was stricken because of plaintiff's failure to adduce supporting proof! Thus we have the anomalous situation in which this court finds that there was evidence for the jury of negligence on the part of defendant in failing to warn plaintiff of the tractor's characteristic of instability on an incline, while the trial court found that there was no evidence of such characteristic.

dence of "active negligence." * Thus it seems to me that these decisions fail completely as authority for finding that a failure to warn constituted evidence of active negligence on which to base a jury verdict of liability in the case at bar.

Being unable to find any evidence of active negligence, as I understand the term, I would, therefore, reverse the judgment of the trial court.

I could not agree to affirmance, however, even if I were to accept the majority's interpretation of "active negligence." Express or implicit in the majority opinion are findings that there was evidence to go to the jury on the following propositions:

A tractor is unstable when operated on an incline. Defendant and his son knew or should have known this.

---

* Polston v. S. S. Kresge Co., 324 Mich 585, 37 NW2d 638.
 Defendant's employee negligently lowered an awning, knocking plaintiff from a ladder on which he was working.
 Wieghmink v. Harrington, 274 Mich 409.
 Defendant's employee negligently released coal, thus overloading a hopper upon which plaintiff was standing.
 Schmidt v. Michigan Coal & Mining Co., 159 Mich 308, 123 NW 1122.
 Defendant's employee negligently operated a compressor apparatus, causing explosion of a tank near which plaintiff was standing.
 Garstka v. Republic Steel Corp., 294 Mich 387, 293 NW 691.
 Defendant's employees negligently operated a crane so as to crush plaintiff against a railroad car.
 Anderson v. Welty, 334 SW2d 132 (Mo 1960).
 Defendant's employee drove cattle into an alleyway where plaintiff was standing. In this case the court commented on failure to warn as not constituting active negligence. It stated at page 137:

> . . . So, the familiar statement that a bare licensee takes the premises as he finds them usually has been limited by the equally-familiar exception of "wanton-

Plaintiff did not know this, and could not have been expected to know it, despite his having operated the tractor for two hours.

The tractor tipped over because of its dangerous instability when operated on an incline.

The tractor tipped over because defendant had not warned plaintiff of its dangerous instability when operated on an incline.

In thus failing to warn plaintiff, defendant's son was acting as defendant's agent.

Plaintiff exercised ordinary care for his own safety at the time.

That plaintiff had the burden of proof needs no citation of authority. It is my opinion that he failed to introduce any evidence on any of these propositions. For these reasons, too, I would reverse.

---

ness, or some form of intentional wrong or *active negligence by the owner or occupier."*

. . . . . .

. . . Although a failure to warn, *standing alone,* is negative in nature [Anderson v. Cinnamon, 365 Mo 304, 282 SW2d 445, 450(8), 55 ALR2d 516], we have no doubt but that the negligence with which instant defendants were charged, and of which they were found guilty, i. e., their failure to warn coupled with their affirmative conduct in driving cattle into the alley when they reasonably should have anticipated or foreseen the presence of persons there, constituted active or affirmative negligence.