Robert KILIAN, Plaintiff-Appellant,

v.

**LOUISVILLE & NASHVILLE RAIL-ROAD COMPANY, Defendant-Appellee.**

No. 15684.

United States Court of Appeals
Seventh Circuit.

Jan. 6, 1967.

Edward A. Berman, Jay A. Schiller, Chicago, Ill., for appellant.

Howard F. Husum, Chicago, Ill., James O. Silliman, Chicago, Ill., Eckhart, Mc-Swain, Hassell & Husum, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

HASTINGS, Chief Judge.

This is an appeal by Robert Kilian, a citizen of Illinois, from an adverse judgment of the district court, entered in his diversity negligence action, in favor of the Louisville & Nashville Railroad Company, a Kentucky corporation, following a jury trial based upon the sole issue of liability.

On the date of the accident in question, May 31, 1962, Kilian was employed by the Western Union Company as a lineman. Western Union had entered into a leasing arrangement with the railroad whereby the railroad agreed, for a small yearly rental, to allow Western Union, which wished to install a communications service for a third party, to string a wire on telephone poles owned by the railroad and located on its right-of-way in Tennessee.

The pole line, which was old and contained untreated poles, was fifty miles long and contained approximately 1200 to 1500 poles. Although the railroad did not specially inspect the line at the time in question, its agent who authorized the attachment of the wire informed Western Union that the condition of the line of poles was "fair". Western Union instructed its linemen to use extreme caution and preventative means in climbing the poles since some of them could be rotten or in poor condition.

Kilian testified as to the appropriate inspection procedures followed by Western Union linemen:

"An inspection is to determine if the pole is safe to climb and see if it was damaged in any way or rotted at any point from the ground line to the top of the pole. We always make an inspection of a pole before climbing it. In inspecting a pole the first thing I would do is give it a visual glance to see what of a condition the pole looked like it was in. I would hit the butt of it with my hammer to be sure that I couldn't hear any hollow spots or soft spots and I would dig my spike in to see if I could feel if the pole was rotted. If a spike goes in and breaks off a hunk then you know the pole is rotten.

I was instructed to climb 4 or 5 feet of the pole and shake it some more. I did this on the pole which I was climbing at the time I fell."

Neither the railroad nor Western Union's linemen tested or knew of the condition of the poles below ground.

On May 31, 1962, while the Western Union linemen were engaged in stringing the wire, a pole next to the pole on which Kilian was working broke and fell while being worked on by lineman Patterson. As it fell, the wires strung from it to Kilian's pole pulled on Kilian's pole. Kilian's pole, which was rotted, broke below the ground and fell across the railroad tracks on top of Kilian, who suffered severe injuries.

Kilian instituted a suit for damages against the railroad only, generally charging it with carelessness and negligence in its maintenance of its poles, in its inspection of them, in its representation that the pole line was in fair condition, and in its failure to warn Kilian that the poles had not been inspected or maintained.

On appeal, Kilian contends that the trial court erred in refusing to give an instruction proffered by him and in giving three instructions over his objections. The latter instructions are claimed to place undue emphasis upon Kilian's conduct. He also argues that the trial court should have entered judgment for him notwithstanding the verdict of the jury.

The relevant parts of the court's instructions in question are set out in the margin.[1]

The record discloses that Kilian actually withdrew his tendered instruction. However, the basis of the instruction is essentially the same ground Kilian asserts as his objection to the court's instructions, that is, the proper standard of care required of the railroad. Since Kilian's basic argument is the same, whether we consider the instruction withdrawn or refused, we will assume it was refused.

Kilian's tendered instruction placed a duty upon the railroad to know the condition of its poles and to warn Kilian that no inspection had been made. The instructions given required only that the railroad exercise ordinary care and that if the jury found the railroad did not have knowledge of a dangerous condition

---

1. *Defendant's instruction N:*

"The defendant owed the plaintiff the duty to exercise ordinary care to keep its property reasonably safe for use by the plaintiff. The fact, however, that the accident occurred on the defendant's property does not, without the proof of negligence, entitle the plaintiff to recover."

*Defendant's instruction O:*

"The defendant has raised the affirmative defense that the plaintiff assumed the risks of the dangers out of which he contends his injury arose. The plaintiff assumed all normal and obvious risks which resulted from his use of defendant's poles and property.

"To prove the defense of assumption of risk, the defendant has the burden of proving each of the following propositions:

First, that the activity in which the plaintiff was engaged at the time of the accident in question involved certain dangers.

Second, that the plaintiff knew that these dangers existed and realized the possibility of injury from them, or in the exercise of ordinary care would have known the dangers existed and realized the possibility of injury from them.

Third, that the plaintiff voluntarily performed the activities out of which his alleged injury arose.

Fourth, that some one or more of these dangers were the cause of the plaintiff's alleged injury.

"If you decide that any of these propositions has not been proved, then the defendant has not proved the affirmative defense of assumption of risk. If, on the other hand, you decide that each of these propositions has been proved, then defendant has proved this affirmative defense and your verdict should be for the defendant."

*Defendant's instruction S:*

"Liability of the defendant to the plaintiff may be grounded on superior knowledge of the defendant as to any dangerous or defective conditions existing on its property. If you find from a preponderance of the evidence that the conditions which resulted in plaintiff's alleged injuries were as well known to the plaintiff as to the defendant, then your verdict should be for the defendant."

superior to that of Kilian, then Kilian could not recover.

Altogether, Kilian's objections to the instructions constitute an argument that as between the railroad and Kilian, if both were equally ignorant of the dangerous condition, then Kilian should recover, for the railroad, he asserts, had a duty to exercise reasonable care to discover the dangerous condition.

■■ The parties are agreed that the substantive law of Tennessee, where Kilian's accident occurred, governs this case. As a federal court sitting in a diversity case, the district court was bound to apply the conflicts of law rules of Illinois. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 62 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941).

■■ Illinois itself would apply the law of the state in which Kilian's accident occurred. See Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 73–74, 199 N.E. 2d 769 (1964); Cunag v. McCarthy, 42 Ill.App.2d 36, 40, 191 N.E.2d 404 (1963), and cases cited there. While Illinois will not execute or apply foreign law which is against its public policy, differences in law between Illinois and another state are not sufficient grounds to refuse to apply the law of the foreign state. In Illinois, as in other states, there is a strong policy in favor of recognizing rights and duties validly created by foreign law. Coleman for Use of Haberman v. American Sheet & Tin Plate Co., 285 Ill.App. 542, 548, 2 N.E.2d 349 (1936).

■■ Tennessee law is clear that the duty of an owner to a licensee or invitee is to exercise ordinary care to maintain the premises in a reasonably safe condition. Phillips v. Harvey Co., 196 Tenn. 174, 264 S.W.2d 810 (1954). Tennessee holds that an owner is not an insurer, and that liability of the owner for injuries to a visitor, even when the visitor is an invitee, depends upon his superior knowledge of the danger to the invitee.

Phillips v. Harvey, supra, at 812; Park v. Sinclair Refining Co., 24 Tenn.App. 204, 142 S.W.2d 321, 324 (1940); Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 118 S.W.2d 213, 217 (1938). Whether, in the *exercise of ordinary care,* the owner should know of the existence of a dangerous condition is a question for the jury. Broome v. Parkview, Incorporated, 49 Tenn.App. 725, 359 S.W.2d 566 (1962). Cf. Walls v. Lueking, 46 Tenn.App. 636, 332 S.W.2d 692 (1959).

■ In *Nichols,* supra, 118 S.W.2d at 218, the Tennessee court quoting approvingly from 20 R.C.L. 107, said:

"Liability is established when it is shown that the peril, being of the defendant's creation, was known to the defendant, but not to the person injured; and no liability is predicable of the injury when it appears that *the injured person's knowledge of the danger surpassed or equalled that of defendant.*"

Thus, the superior knowledge doctrine is the law in Tennessee, and it has not been expanded to *require* that the owner inspect his property for possible dangers or defects.

■ Whether the railroad, in the exercise of ordinary care, should have known that some of the poles in the line were rotten below the ground and whether it should have taken affirmative action were questions for the jury, to be considered under proper instructions as to the relevant Tennessee law. Broome v. Parkview, supra.

■ The jury was instructed that Kilian claimed the railroad was negligent in one or more of the following respects:

"1. Carelessly maintaining the telephone poles along its right-of-way;

"2. Failing to reasonably inspect the telephone poles along its right-of-way;

"3. Failing to warn plaintiff that the poles along its right-of-way had not been inspected or maintained;

"4. Representing to the plaintiff that the condition of the poles was fair."

Kilian's refused instruction is similar to the instruction the trial court gave respecting the opposing theories of the case. The main difference is that in the refused instruction, Kilian asserted that the railroad was negligent

"In permitting its telephone poles along its railroad right-of-way to be in a rotten and dangerous condition of which condition the Defendant knew or in the exercise of ordinary care ought to have known."

and

"In representing that the telephone poles along its railroad right-of-way were in 'fair' condition; when in fact nothing was done to ascertain the actual condition of said telephone poles."

The jury was correctly instructed that the railroad owed Kilian the duty to exercise ordinary care and that it was for the jury to decide how a reasonably careful person would have acted under the same or similar circumstances.[2] Since the jury was instructed as to Kilian's theories of negligence, it was enabled to consider whether, in the exercise of ordinary care, the railroad had a duty to maintain its poles, inspect them, warn Kilian of their condition, and whether the railroad was negligent in its representation that the line of poles was in fair condition.

 Kilian argues, however, that the doctrine of superior knowledge has never been held to excuse complete inaction by an owner who has affirmatively represented the condition of his property.

The railroad described the condition of the pole line as fair. This was taken by Western Union, at least in its instructions to its linemen, to mean that some of the poles could be rotten. *There was further testimony that a pole line in fair condition could have defective or broken poles.* No particular reliance on the representation of the railroad was shown. In such circumstances, little duty can be generated out of the railroad's "affirmative" representation.

We hold that the trial court did not err in giving its instruction upon the Tennessee doctrine of liability dependent upon superior knowledge, and in its refusal to give Kilian's proffered instruction.

 We have been directed to no error in the remaining two instructions objected to by Kilian other than the fact that the instructions assertedly placed an undue emphasis upon Kilian's conduct.

Assuming that "undue emphasis" might be a question for appellate review, at least on the theory of prejudice so great as to constitute reversible error, we fail to find a requisite undue emphasis in the instructions given by which Kilian could have been prejudiced. The instructions fairly state the law and are relevant to the facts. The railroad was entitled to have its theories of defense submitted to the jury. The instructions given by the court must be considered as a whole.

 Kilian also argues that the evidence established the railroad's liability as a matter of law and that the trial court should have entered judgment for Kilian notwithstanding the jury's verdict. He contends that, from the evidence presented, all reasonable

---

2. Among other unchallenged instructions given by the court is one defining "ordinary care", as follows:

"When I use the words 'ordinary care,' I mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide.

"Ordinary care is not an absolute term but a relative one. That is to say, in deciding whether ordinary care was exercised by either party in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances as shown by the evidence in the case."

men would have concluded that the railroad's negligence caused his injury.

This contention is merely a restatement of Kilian's objections to the law of Tennessee. In a jurisdiction other than Tennessee, the railroad's conduct might have constituted negligence under applicable law. In this case, however, the question of negligence was for the jury under applicable Tennessee law. Viewing the evidence in the light most favorable to the defendant, it cannot be said to compel the conclusion that the railroad's negligence was established as a matter of law.

We find that in considering the evidence as a whole, in the light most favorable to the prevailing party, the record provides substantial and adequate support for the verdict returned by the jury. The trial court did not err in denying Kilian's motion for judgment n. o. v.

Finally, in considering the instructions given as a whole, we conclude that the jury was fairly and adequately instructed and that the trial court did not err in ruling as it did with reference to instructions complained of by Kilian.

The judgment appealed from is affirmed.

Affirmed.

KILEY, Circuit Judge (concurring).

I concur in the judgment reached in the majority opinion, but because of doubt as to the correctness of the statement of the Tennessee doctrine of superior knowledge, I prefer to base my judgment on a different ground.

My doubt arises from reading the Tennessee cases. In Illinois Cent. R.R. v. Nichols, 173 Tenn. 602, 118 S.W.2d 213 (1938), the Tennessee Supreme Court properly decided on the facts that as a matter of law Nichols' knowledge was "at least" equal to defendant's. The Tennessee Court of Appeals in Park v. Sinclair Refining Co., 24 Tenn.App. 204, 142 S.W.2d 321 (1940), also properly decided in my view that as a matter of law on the facts and concessions there Park's knowledge was equal to the defendant's.

Both *Nichols* and *Park* state the rule of liability as applied to the peculiar facts of each. Later Court of Appeals cases, however, Walls v. Lueking, 46 Tenn.App. 636, 332 S.W.2d 692 (1959), and Broome v. Parkview, Inc., 49 Tenn.App. 725, 359 S.W.2d 566 (1962), clearly advance a rule less stringent than that stated by the majority. Under the rule stated in *Walls*, an owner's liability could rest on constructive knowledge as well as actual knowledge, where the danger was not normal or obvious. 332 S.W.2d at 695. And in *Broome,* constructive knowledge is clearly a ground of liability. 359 S.W. 2d at 569. In both these cases certiorari was denied by the Tennessee Supreme Court. In my view the Tennessee law does not mean that liability will be defeated when there is equal *ignorance* of the danger, but only when the plaintiff knows or should have known of the danger.

However, I concur because I see no prejudicial error in the giving of defendant's instruction S (which purports to state the Tennessee rule of superior knowledge) which when read with the other instructions seems to me is freed of ambiguity. Although instruction S is directory, and ordinarily would have to be considered alone, I think on the facts here it need not be. Cf. Woods v. Meacham, 46 Tenn.App. 711, 333 S.W.2d 567, 582 (1959). Under the first sentence of instruction S the liability of defendant "*may* be grounded" on its superior knowledge. But the second sentence, taken alone, can be read as limiting liability to actual superior knowledge, thus omitting consideration of defendant's failure to have the superior knowledge it should have had. The sentences read together create an ambiguity. However, defendant's instruction O and the instruction reciting the claim of plaintiff that defendant failed to "reasonably inspect telephone poles," when read with defendant's instruction S, remove the ambiguity. It seems to me the result is that the jury was told that if plaintiff proved defendant did not reasonably inspect the telephone poles as it should have—and

accordingly did not have the superior knowledge it ought to have had—then if other elements of plaintiff's case were proven, the jury should find defendant liable. Thus, as the majority opinion states, when the instructions are considered as a whole, there was no prejudicial error to Kilian.